29 C.C.P.A. (Patents)

## In re McFARLANE.
### Patent Appeal No. 4445.

Court of Customs and Patent Appeals.
Feb. 2, 1942.

Maynard D. McFarlane, pro se.

W. W. Cochran, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming that of the Primary Examiner rejecting, for want of patentability over the cited prior art, claims 6 to 14, inclusive, and 16 to 24, inclusive, of an application for a patent for new and useful improvements in translation of modulated electric current into a series of impulses. Seven claims were allowed.

The appeal was first argued here and submitted for decision March 4, 1941. On June 30, 1941, the court ordered the appeal to be reargued upon the question of the validity of rule 75 of the Rules of Practice in the Patent Office in view of the decision in the case of Electric Storage Battery Co. v. Shimadzu et al., 307 U.S. 5, 613, 616, 59 S.Ct. 675, 83 L.Ed. 1071. Reargument was had and the appeal again submitted November 3, 1941.

Rule 75 is as follows: "Rule 75. When an original or reissue application is rejected on reference to an expired or unexpired domestic patent which substantially shows or describes but does not claim the rejected invention, or on reference to a foreign patent or to a printed publication, and the applicant shall make oath to facts showing a completion of the invention in this country before the filing of the application on which the domestic patent issued, or before the date of the foreign patent, or before the date of the printed publication, and shall also make oath that he does not know and does not believe that the invention has been in public use or on sale in this country, or patented or described in a printed publication in this or any foreign country for more than one

BLAND, Associate Judge, dissenting.

———◇———

year[1] prior to his application, and that he has never abandoned the invention, then the patent or publication cited shall not bar the grant of a patent to the applicant, unless the date of such patent or printed publication be more than one year[1] prior to the date on which application was filed in this country."

Section 4886 of the Revised Statutes, 35 U.S.C.A. § 31, which is directly involved in one of the questions before us, reads as follows: "Any person who has invented or discovered any new and useful art, machine, manufacture, or composition of matter, or any new and useful improvements thereof, or who has invented or discovered and asexually reproduced any distinct and new variety of plant, other than a tuber-propagated plant, not known or used by others in this country, before his invention or discovery thereof, and not patented or described in any printed publication in this or any foreign country, before his invention or discovery thereof, or more than one year prior to his application, and not in public use or on sale in this country for more than one year prior to his application, unless the same is proved to have been abandoned, may, upon payment of the fees required by law, and other due proceeding had, obtain a patent therefor."

It should be observed that the one-year period referred to in section 4886 as above quoted is limited to applications filed on or after August 5, 1940, and that as to applications filed prior to said date the period is two years.

The application before us, serial No. 97,-203, filed August 21, 1936, is a division of another application, serial No. 113,432, filed June 3, 1926, which ripened into patent No. 2,070,913.

The references cited are a patent to Watson, No. 2,115,894, and a patent to Weaver, No. 1,709,926, both of which were granted on applications filed December 15, 1923.

As stated in the brief of appellant: "The invention relates to the electrical transmission of pictures and facsimiles from point to point, and the claims in issue relate to a specific sub-combination in that art. The claims are based upon the use by appellant of an optical system in scanning the original picture or subject to be transmitted, whereby the said subject is caused, by means of reflected light, to modulate a photo-electric cell output, and to cause certain operations as a consequence thereof. All prior systems of picture transmission passed light through a photographic transparency to reach the photo-electric cell."

It is admitted that the references disclose but do not claim the invention defined in the rejected claims. Appellant contends (first) that he has overcome the filing date of the references by filing affidavits under rule 75 alleging a prior reduction to practice in England, and that such affidavits should be held to entitle him to a patent despite the requirement that the showing of completion of the invention under that rule must be "in this country." Appellant bases this contention on the ground that the commissioner exceeded his powers in inserting in the rule the words "in this country" between the words "a completion of the invention" and "before the filing of the application," and that the rule is invalid only to that extent. Appellant's second contention is that these affidavits showed that he had introduced the invention into this country prior to December 15, 1923, the filing date of the references.

In view of our conclusion with respect to appellant's contention that he has overcome the patent references by an actual reduction to practice in England prior to the filing date of the references, and is entitled to an allowance of the involved claims by reason of that fact, notwithstanding the provision of rule 75 above referred to, it is unnecessary for us to consider appellant's second contention that he introduced the invention into this country prior to December 15, 1923, the filing date of the references.

Appellant's affidavits set forth that he actually reduced the invention to practice in England prior to the filing date of the applications upon which the reference patents were issued, and the Board of Appeals conceded that appellant had established reduction to practice in England by such affidavits.

Appellant contends that his reduction to practice in England made prior to the filing date of the references is available to him under the doctrine announced in Electric Storage Battery Co. v. Shimadzu

---

[1] In the case of applications for patent filed prior to August 5, 1940, this period is two years instead of of one year.

et al., 307 U.S. 5, 613, 616, 59 S.Ct. 675, 679, 83 L.Ed. 1071, and alleges that since rule 75 is based upon R.S. § 4886 (U.S.C., title 35, sec. 31, 35 U.S.C.A. § 31) the Patent Office has written into the rule the words "in this country" which the Supreme Court refused to write into the statute, and that the rule is to that extent invalid.

The Board of Appeals was of the opinion that the decision in the Shimadzu case, supra, was intended to apply only to the special circumstances of that case and therefore that it did not apply to practice under the said rule 75.

In that case it appears that Shimadzu, a citizen and resident of Japan, and owner of three United States patents, sued the Electric Storage Battery Co. for infringement. The defendant denied that Shimadzu was the first inventor; asserted knowledge and use of the invention by it in the United States more than two years prior to the dates of the Shimadzu applications, and pleaded that earlier patents procured by Shimadzu in Japan avoided the United States patents as the former were for the same inventions and each was granted more than a year prior to the filing of the corresponding applications in this country.

The facts in that case appear in the opinion as follows: "The inventions which are the basis of the patents were conceived by Shimadzu and reduced to practise in Japan not later than August 1919. He did not disclose the inventions to anyone in the United States before he applied for United States patents. Application was presented for No.1,584,149 on January 30, 1922; for No. 1,584,150 on July 14, 1923; and for No. 1,896,020 on April 27, 1926. The inventions were not patented or described in a printed publication in this or any foreign country prior to the filing of the applications. The petitioner, without knowledge of Shimadzu's inventions, began the use of a machine, which involved both the method and the apparatus of the patents, at Philadelphia, Pennsylvania, early in 1921 and attained commercial production in June 1921. Over the objection of the petitioner the respondents were permitted by testimony, and by the introduction of contemporaneous drawings and note books, to carry the date of invention back to August 1919, and the courts below fixed that as the date of invention and reduction to practise in Japan."

It will be seen in that case that the patents had already been granted and the court held that it was proper to permit the patentee to show an actual date of invention in Japan earlier than that of the alleged prior knowledge and use by the Electric Co.

In arriving at its conclusion the court examined R.S. § 4886 in the light of its development from earlier patent statutes, and stated:

"These successive alterations throw into relief the fact that the section makes the criterion of novelty the same whether the invention was conceived abroad or in this country. The test is whether the invention was 'known or used by others in this country, before his invention or discovery thereof.' The elements which preclude patentability are a patent, or a description in a printed publication in this or any foreign country, which antedates the invention or discovery of the applicant.

"None of the statutes has ever embodied as an element the place of invention or discovery, but the change effected by the Act of 1836, and carried forward in all succeeding statutes, is the fixation of the actual date of the inventive act as the date prior to which the invention must have been known or used to justify denial of a patent for want of novelty. The omission of any limitation as to the place of invention or discovery precludes a ruling imposing such a limitation, especially so since the Act of 1870 expressly limited the area of prior knowledge or use to this country."

The court further declared that R.S. § 4887 (U.S.C., title 35, sec. 32, 35 U.S.C.A. § 32) "does not contain any provision which precludes proof of facts respecting the actual date of invention in a foreign country to overcome the prior knowledge or use bar of § 4886."

The court also held that R.S. § 4923 (U.S.C., title 35, sec. 72, 35 U.S.C.A. § 72) on its face was not applicable to the facts in the Shimadzu case. "The effect of this section," said the court, "is that in an interference between two applicants for United States patent, or in an infringement suit where the alleged infringer relies upon a United States patent, the application and patent for the domestic invention shall have priority despite earlier foreign knowledge and use not evidenced

by a prior patent or a description in a printed publication."

The court recognized the seemingly illogical distinction between the effect of R.S. § 4923 and R.S. § 4886, in view of its holding that under § 4886 a date of invention in a foreign country prior to the date of the application in the United States may be proved as the actual date of the invention, while under § 4923 the application and patent dates for a domestic invention have priority in the face of earlier foreign knowledge and use in the absence of a prior patent or printed publication. As illustrative of the distinction the court said: "* * * Thus, if a diligent domestic inventor applies, in good faith believing himself to be the first inventor, Section 4923 assures him a patent and gives it priority, despite prior foreign use, even though that use is evidenced by a patent applied for after the invention made in this country. The foreign applicant or patentee cannot carry the date of his invention back of the date of application in this country, as the holder of a later patent for an invention made here would be permitted to do in order to establish priority. On the other hand, a domestic inventor who is willing to dedicate his invention to the public may be held as an infringer by reason of the later patenting of an invention abroad which antedates the invention and use in this country; and so is put in a worse position vis a vis a foreign inventor who subsequently secures a patent, and succeeds in establishing an earlier date of invention, than he would occupy if he had promoted his own interest by procuring a patent."

In order to relieve the disadvantage under which the Electric Co. labored by reason of the said distinction between R.S. § 4886 and R.S. § 4923, the court pointed out that it would have been compelled to read into § 4886, between the words "discovery thereof" and the words "and not patented," the phrase "in this country." This the court declined to do, stating: "* * * Moreover, Sections 4886 and 4887 have repeatedly been amended and other portions of the patent act have been revised and amended from time to time since the decisions pointing out that Section 4886 did not prevent the foreign inventor from carrying back his date of invention beyond the date of his application. Congress has not seen fit to amend the statute in this respect and we must assume that it has been satisfied with, and adopted, the construction given to its enactment by the courts."

While the facts in the instant case are in no way parallel to those in the Shimadzu case, supra, the basic question in that case was the proper construction of § 4886, supra, and that is the basic question in the case at bar.

Rule 75 does not permit an inventor who is an applicant for a patent to show that he had completed the invention in a foreign country in order to overcome a domestic patent reference which substantially shows but does not claim the invention. In the Shimadzu case the same contention was in effect made—that Shimadzu, in order to establish the validity of his United States Patents, should not be permitted to show the completion of the involved invention in Japan prior to the first use of the invention by the appellant, Electric Storage Battery Co., in this country.

 Rule 75 clearly denies to an inventor, under the provisions of section 4886, a right which the Supreme Court in the Shimadzu case held exists under that section. While it is true that the case last cited was an infringement suit, and the case at bar is an ex parte proceeding in the Patent Office, it is, it seems to us, too plain for argument that section 4886, which relates to the granting of a patent, cannot receive one construction in an infringement suit and a different and contrary construction in an ex parte proceeding in the Patent Office.

Rule 75 clearly precludes an inventor from showing facts, under circumstances such as are here involved, to establish completion of his invention in a foreign country, pursuant to the provisions of section 4886, whereas the Supreme Court in the Shimadzu case held that there is no warrant for holding that under the provisions of section 4886 an inventor must complete his invention in this country before he is entitled to a valid patent.

Under the Supreme Court's construction of the patent statutes in the Shimadzu case, if the claims before us are allowed and patent for them is issued, such patent will be valid over the cited references if the patentee can establish the facts set out in his affidavits respecting the completion of the invention in England prior to December 15, 1923, the date of the applications of the reference patents. However,

rule 75 declares in effect, without any authority of law, that the applicant here shall not receive a patent even though he did complete his invention in England before December 15, 1923, the date of the applications of the reference patents, although a patent if issued to him would be valid.

In order to sustain the validity of rule 75, we would be compelled to hold that the Commissioner of Patents, under the provisions of section 4886, supra, may by rule forbid the very thing which the Supreme Court has held that the section permits.

█ It follows that in our opinion the construction given section 4886 in the Shimadzu case clearly invalidates so much of rule 75 as requires proof by affidavit of the completion of the invention in this country in order to overcome a domestic patent reference which discloses but does not claim the invention involved.

█ We do not think, however, that the entire rule 75 is invalidated, for the words "in this country" in respect to completion of the invention can be ignored, leaving all other parts of the rule intact, and presumably said words "in this country" would have been omitted from the rule had the Shimadzu decision been rendered prior to the formulation of the rule.

We appreciate the difficulties confronting the Patent Office in administering the patent laws under the construction given by the Supreme Court to section 4886, supra, but in order to sustain rule 75 we should be compelled to construe said section differently from, and contrary to, the construction given it by the Supreme Court. To use the words of that court in the Shimadzu case, "we should have to read into the law words which plainly are missing. We cannot thus rewrite the statute."

█ It is plain from the foregoing that authorization to the Commissioner of Patents to establish rule 75 as framed by him must come from Congress and cannot be supplied or ratified by judicial interpretation.

However, the difficulties arising from the construction given by the Supreme Court to section 4886 may not be so serious as would at first impression appear.

We have no doubt that the Commissioner of Patents may by rule require proof other than the mere affidavit of the applicant to establish completion of an invention in a foreign country. He may require corroboration of the statements in an applicant's affidavit respecting the completion of the invention in a foreign country, and that corroboration may be required in the form of affidavits or depositions.

This, however, is a matter for the consideration of the Commissioner of Patents. We mention it here only to prevent any implication from our decision that a mere affidavit of an applicant must be accepted as proof of the completion of an invention in a foreign country, should the commissioner, in the exercise of his proper authority, by rule require supporting evidence corroborating the statements of an applicant.

█ It follows from the foregoing that that portion of rule 75 is invalid which requires, before a patent may be issued, proof of the completion of the invention in this country in order to overcome a reference to a domestic patent which discloses but does not claim the invention involved; that the words "in this country" as used in rule 75 in connection with the completion of the invention should be ignored as not warranted by law, and that in all other respects bearing upon the question before us, rule 75 is valid; that upon the record before us it must be held that the reference patents to Watson, No. 2,-115,894, and to Weaver, 1,709,926, do not bar the allowance of the involved claims, for the reason that appellant's affidavits, accepted by the Board of Appeals as true, show completion of his invention in England prior to December 15, 1923, the date of the applications upon which the reference patents were issued.

For the reasons stated herein, the decision appealed from is reversed.

Reversed.

BLAND, Associate Judge (dissenting).

The facts in the case are not in dispute and are clearly and succinctly stated in the opinion of the majority.

The majority found it unnecessary to pass upon the question as to whether or not the appellant had introduced his invention into this country prior to the filing date of the references upon which the claims were rejected. I am in agreement with the Patent Office tribunals that appellant failed to prove this important fact.

There is but one issue, which is also clearly stated in the majority opinion. The phrase in Patent Office rule 75 "and the applicant shall make oath to facts showing a completion of the invention *in this country* before the filing of the application on which the domestic patent issued" (italics not quoted) is the basis for the rejection by the Patent Office of appellant's involved claims. The issue presented is: In view of the language used by Congress in section 4886, R.S., was the Patent Office justified in applying to appellant's application a rule which required him, in order to overcome prior cited patent references disclosing, but not claiming, the invention which appellant is claiming, to show by affidavit that he completed the invention *in this country* before the filing date of the references. In other words, the exact issue is whether or not making such a requirement by the Patent Office was a valid exercise of power contemplated by the framers of the patent statute.

The phrase in controversy—"in this country"—first became a part of the Patent Office rules in 1888. Annotated Patent Office Rules, Stoddard, page 309. It has, therefore, been in full force and effect for more than half a century. The Patent Office has always had, and must necessarily have, the power to adopt rules for its own guidance and for the guidance of the public in determining who was the first inventor within the contemplation of the patent statute. It exercises this right under definite, fixed rules in ex parte proceedings, such as we have before us, and in interference proceedings where priority of invention is the issue to be determined. In inteference proceedings, work done abroad in completing an invention may not be considered. Rebuffat v. Crawford, 68 F.2d 980, 21 C.C.P.A., Patents, 901.

I cannot attribute to Congress the intent of giving a foreign inventor in an ex parte case the right to establish his priority of invention over a cited reference by relying upon the completion of his invention abroad and at the same time denying him the right to prove the same fact when he is in a contest for priority.

As I read the opinion of the majority, the conclusion is reached solely upon the ground that we are bound to hold that appellant is entitled to a patent upon the instant record solely on account of the holding of the Supreme Court in the case of Electric Storage Battery Co. v. Shimadzu et al., 307 U.S. 5, 613, 616, 59 S.Ct. 675, 83 L.Ed. 1071. It is my view that that case is not pertinent in deciding the issue at bar. The facts in that case are wholly different from those here under consideration. There the Patent Office had granted to a citizen of Japan certain patents which formed the basis of an infringement action against the Electric Storage Battery Co. These patents were presumptively valid and courts of equity have always gone as far as was logically possible to sustain and hold valid patents which constitute valuable property rights. The Japanese citizen, with two American patents, in that case was permitted to prove that his invention was completed in the foreign country before the alleged knowledge and use of the invention in the United States by the Electric Storage Battery Co. Let it not be forgotten that in that case the patents in controversy were American patents which this Government, through the Patent Office, had issued with the usual assurance that they extended a valid monopoly in which American capital could invest. The Electric Co. was not claiming that it, by taking out a patent, had helped the American public, and the appellant here is not a patentee. Shimadzu was a patentee.

I see nothing incongruous about the Shimadzu decision. The Supreme Court was there doing what is usually done in equity cases—sustaining the validity of an American patent against the attack of one who had evidenced no interest in the patent system. Since the Electric Co. had the right to defend itself by proof of prior knowledge and use, why should a foreign inventor with an American patent not be permitted to prove that he had completed his invention before such prior knowledge and use?

The facts in that case differ so greatly from those at bar as to require the application of a different principle of law. Here is an English applicant, not a patentee, seeking to come into our Patent Office and claim that which had already been disclosed, not claimed and dedicated to the public. We are not here concerned with an issue relating to sustaining the validity of patent claims. By analogy to interference proceedings, priority of invention is involved. The best interests of the American patent system require, especially at this critical hour, that rights of the American public be protected and that a foreigner may not do under rule

75 that which he or one of our own people may not do when priority of invention is attempted to be proved in an interference proceeding.

The Solicitor for the Patent Office, in the instant case, makes the following clear statement concerning the Shimadzu case:

"* * * However, the Supreme Court [in the Shimadzu case] was careful to point out that there was no question of priority involved as between two applications, both filed in the United States Patent Office. The court pointed out that the patentee was the only one who had filed an application and that the work there to be relied upon as showing prior invention had never been brought to the benefit of the public by filing any application therefor in the United States Patent Office. * * *

"* * * Rule 75 deals only with overcoming a patent which describes but does not claim the invention of the printed publication. As the Supreme Court was careful to point out, as has hereinbefore been noted, the case before the Supreme Court did not involve, by way of anticipatory matter, either a printed publication or a domestic patent. The matter raised by way of anticipation was merely knowledge by another party and the party who had the knowledge in this country had never presented it to the Patent Office in an application for a United States patent."

It is my firm conviction that to hold that a foreign applicant can prove by affidavit or otherwise that he made his invention in a foreign country and thereby deprive an American citizen of acquired patent rights is opening Pandora's box. Surely, Congress when it enacted section 4886, R.S., so as to encourage invention, industry and the investment of capital in this country, never intended such a result as the appellant here contends for. True enough, we give foreigners patents in this country as they do us, but we reward them because of what they do for us, and they have done nothing for us unless they disclose their inventions here, and the appellant disclosed his too late. To permit proof of the character submitted by appellant or suggested by the majority, I respectfully submit, is opening the doors of the Patent Office to the possibility of fraud, perjury, inconvenience to American citizens, and great damage to our patent system. While we may not read into the statute the phrase

"in this country" when an issued American patent is at stake, as in the Shimadzu case, it certainly does no violence to what I regard was the definite purpose of Congress in reading into it "in this country" when the question involved is the issuance of a patent to a foreign inventor. It is my view that if the present issue were before the Supreme Court of the United States, it would quickly and clearly distinguish the law applicable to the instant facts and its holding in the Shimadzu case, supra. I can see no way that the Patent Office could have handled the situation any better than it did by inserting the controverted provision in the rule more than half a century ago. Now the majority has suggested an amendment to the rule. Rule 75 would probably not have been kept in effect for fifty years by the Patent Office were it not for the controverted provision being contained therein. I do not choose to participate in making and passing upon the validity of a Patent Office rule before it is adopted by that tribunal.

It has long been well settled that language in a court decision applies only to the particular facts in that case and that courts will not strictly apply such language to different facts where incongruous results follow, and it is not enough to say that if we are wrong in our holding Congress can take cognizance of it. It is my view that in the enactment of section 4886, Congress, in the use of the term "Any person who has invented or discovered any new and useful art [etc.]," never contemplated such a construction thereof as would tend to tear down the system which it was establishing and rob the American people of privileges which they are entitled to enjoy.

The only authority directly in line on the instant issue is Ex parte Grosselin, 1901 C.D. 248. True enough it is only a Patent Office decision, but it is so logical in its handling of the identical question here involved that it carries instant conviction with it. I will not quote therefrom, but it is sufficient to say that in that decision Commissioner Allen pointed out that the foreign inventor there involved was doing nothing for this country, within the spirit of the patent law, when he made his invention abroad; that he disclosed nothing to the American public, and that the reward should properly go to him who, in compliance with the spirit of the law, first gave the American public the benefit

of his ideas. In the instant case, the inventors of the two references clearly disclose that which the American public could understand and use at will and it is not reasonable to conclude that Congress ever intended to deprive American citizens of their rights in the manner suggested by the appellant.

Patents are not granted solely to reward the inventor. It is through rewarding him that the public is benefited, and undoubtedly it was the improvement to the arts that motivated the framers of the constitutional and statutory patent provisions. Until appellant in this case filed an application for a patent here or elsewhere, or published it to the world, in what way had he contributed to the accomplishment of the purposes of the law? Mr. Justice Holmes, speaking for the court in Alexander Milburn Co. v. Davis-Bournonville Co., 270 U.S. 390, 46 S.Ct. 324, 70 L.Ed. 651, expressed the thought this way: "In view of the gain to the public that the patent laws mean to secure we assume for purposes of decision that it would have been no bar to Whitford's patent if Clifford had written out his prior description and kept it in his portfolio uncommunicated to anyone."

It is well settled in patent law that a patent does not always go to the first inventor. He must be the first inventor within the spirit of the patent law. In the celebrated case of Mason v. Hepburn, 13 App.D.C. 86, Mason was the first inventor in fact, but was held not to be in law for the reason that he did not first give the American public the benefit of his invention. The correctness of the holding in Mason v. Hepburn to the effect that the term "Any person who has invented [etc.]" does not necessarily mean the first inventor, even though he could prove his priority beyond controversy, has received universal approval in every court where the question there involved has been raised. First inventors may lose their right to patents where they do not bring themselves within the spirit of the patent law by promoting its purposes and aims. They may lose their right because of their inequitable conduct. See Blackford v. Wilder, 28 App.D.C. 535; Miller v. Hayman, 46 F.2d 188, 18 C.C.P.A., Patents, 848. The court in Mason v. Hepburn, supra, read into section 4886 a provision that was not, but which might well have been, inserted by Congress, and I know of no logical reason why this court is not now justified in upholding the Patent Office in its interpretation of what Congress intended in connection with the subject matter at bar.

It is not my purpose here to belabor the issue relating to long-continued administrative practice. It is sufficient here to say that since the rule has been universally and satisfactorily applied for more than half a century, the question should receive very careful consideration.

For reasons hereinbefore stated, I think that the decision of the Board of Appeals, affirming that of the Primary Examiner in denying appellant's application, should be affirmed.