**HOLLYWOOD–MAXWELL CO. v. STREET'S OF TULSA et al.**

No. 4016.

United States Court of Appeals Tenth Circuit.

June 22, 1950.

John Flam, Los Angeles, Cal. (Paul Dudley, Oklahoma City, Okl. and C. M. Mc-

Knight, Tulsa, Okl., were on the brief with him), for appellant.

Frank L. Durr, New York City (Orville N. Greene, New York City, and David R. Milsten, Tulsa, Okl., were with him on the brief), for appellees.

Before BRATTON, MURRAH and PICKETT, Circuit Judges.

MURRAH, Circuit Judge.

Appellant sued for infringement of its patent 1,997,995 (filed 1933 and issued to J. R. Bowen in 1935), relating to a brassiere designed to hold the breasts firmly in a conical shaped upright position, so as to lend attractiveness to the female figure. The prayer was for a decree of validity, infringement, and the usual injunctive relief. The trial court first held the patent valid and infringed. On remand for further evidence, however, the patent was held invalid for anticipation in view of a French patent number 613,888 (filed 1925 in Paris and issued in 1926), not considered in the first trial. This appeal is from that judgment.

The claims and specifications of the patent in suit discloses a pair of breast cups of conformable fabric material, capable of closely overlying the breasts of the wearer. These cups are outwardly sewed or fastened to two members, preferably of the same material, which extend around the body and fasten together on the back by any suitable means. The cups are inwardly sewed or fastened to a center piece of a relatively inelastic fabric material extending along the inner and lower edges of the cups and side members. The concavity in the lower center between the cups, formed by the extension of the center piece, is bridged by a piece of elastic. The usual shoulder straps run from the top edges of the breast cups to the side members in the rear. Each of the breast cups is formed from three sections of the fabric material, cut or fashioned so that when they are sewed or fastened together, they provide the desired conical or dome shape. One section is a triangular shaped insert adjacent the lower center part of the cup to provide a steep rise from the hollow between the breasts to the apex of the cups. Each cup is reinforced with spiral line stitching from the apex to its base.

The salient and patentable features claimed for the patent are: the spiral stitching for reinforcement; the use of the triangular insert in the cup to give the abrupt rise; and the center piece joining the cups, with elastic bridging its lower extensions.

The spiral stitching is intended to give strength and support to the cups. The center piece between the cups and extending along the lower edges is intended to maintain the definite hollow between the breasts by keeping them separated. The elastic strap bridging the concavity, formed by the extension of the center piece along the lower edges of the cups, is intended to urge the center fabric inwardly against the body of the wearer, and also to keep the cups firmly in place over the breasts, thus at all times molding the contours of the breast to the predetermined conical shape of the cups.

Without describing the accused device, it is fair to state that it is "almost identical" to the patent in suit, and infringes if the patent is valid. The trial court so held, and that holding is not challenged on appeal. And, for the patentee, it is conceded that the patent is invalid if, as the trial court held, it is clearly and definitely anticipated by the French patent.

According to the agreed translation, the purpose of the French patent was to construct a brassiere in a manner to "complete the graceful and supple silhouette of every elegant woman, concerned about her good appearance." It was pointed out that existing brassieres made of a fabric in the direction of the ground thread did not properly suit the globular form of the breasts, but tended to flatten and displace them by pushing them toward the center of the bust, thus giving the silhouette an "uncomely appearance * * * contrary to good taste"; and sometimes causing discomfort and interfering with the regular respiratory organs.

In resume, the brassiere was described as "two globes or pockets in the form of funnels, intended to fix the breasts without compressing them, and each constituted by two pieces cut on the bias of the fabric and joined to each other by a seam." These globes or pockets are sewed at their base on a frame of fabric cut in the direction of the ground thread, and intended to form an indeformable support 'for the two globes or pockets, by extension around the body and fastened in the rear. Another piece of fabric is then sewed to the lower edge of the frame, forming a band around the body below the breasts and above the corset. This band is made double in the part covering the abdomen, and at this point, is equipped with intercrossed stitching to insure a smooth graceful silhouette. The drawings in three figures exhibit the ·funnel shaped pockets with dotted lines, indicating circular or concentric stitching from the apex to the base, fastened to the frame with the band below, both equipped with suitable fastenings in the rear. It also indicates stitching of the frame in the center between the funnels, and cross stitching of the band as it is applied to the abdomen in front. This drawing depicts a close-fitting garment, intended to encase the upper part of the body, and in particular to mold and hold the breasts into predetermined accentuated contours.

The French patent was issued and published more than one year before the patent in suit, and it is therefore competent to anticipate the domestic patent if, but only if, it teaches the invention with sufficient clarity and explicitness to enable those skilled in the art to understand its nature, and to carry it into practical use without further experimentation. Seymour v. Osborne, 11 Wall. 516, 78 U.S. 516, 20 L.Ed. 33; Cohn v. U. S. Corset Co., 93 U.S. 366, 23 L.Ed. 907; General Electric Co. v. Alexander, 2 Cir., 280 F. 852; Wisconsin Alumni Research Foundation v. George A. Breom & Co., 8 Cir., 85 F.2d 166; Steiner Sales Co. v. Schwartz Sales Co., 10 Cir., 98 F.2d 999; Dewey & Almy Chemical Co. v. Mimex, 2 Cir., 124 F.2d 986; Kelley-Koett Mfg. Co. v. McEuen, 6 Cir., 130 F.2d 488; Baldwin-Southwark Corp. v. Coe, 76 U.S.App.D.C. 412, 133 F.2d 359, 365; Application of· Shepherd, 172 F.2d 560, 36 C.C.Pa.Patents 810. And, the burden is upon one relying upon anticipation to sustain it by clear and convincing proof. General Electric Co. v. Alexander, supra; Atlantic Gulf & Pac. Co. v. Wood, 5 Cir., 288 F. 148; Elec. Storage Battery Co. v. Shimadzu, 3 Cir., 123 F.2d 890. But precise identity between the claims and specifications of the domestic and foreign patent is not required—substantial identity is sufficient, and experimentation must be more than the work of a mechanic. Electric Storage Battery Co. v. Shimadzu, supra.

Appellant asserts and offered evidence to the effect that the drawing and specifications of the French patent, properly translated, teach the art of stitching the constituent parts of the cups or funnels before they are sewed together, and that such stitching is circular and concentric, as distinguished from the continuous spiral stitching on the patent in suit. It is insisted that the spiral stitching from the apex to the base, after the cups have been ·formed, gives them durability and molding qualities which the French patent does not possess. It is suggested that the circular or concentric stitching of the fabric, before it is sewed together, leaves the stitching threads more susceptible to breakage and raveling with wear, thereby causing uncomfortable thread "whiskers" in the cups.

The point of this argument is that the French patent does not teach the patentable art of spiral stitching after the cups are formed for purposes of strength and durability without further experimentation.

It is also suggested that the cups in the French patent are formed from two segments of the material cut on the bias, and does not teach the art of using the triangular insert on the lower inside to give the cup the desired steepness. In any event, it is said that the French patent, is vague and susceptible of conflicting theories, rendering it incompetent as

an anticipatory device. See Cimiotti Unhairing Co. v. Comstock Unhairing Co., C.C., 115 F. 524; Atlantic, Gulf & Pac. Co. v. Wood, 5 Cir., 288 F. 148, 155.

The trial court explicitly recognized all of these distinguishing features in the two patents. It also recognized the rule of requisite definiteness and clarity to anticipate, and the heavy burden of proof to establish it. But it was nevertheless of the opinion that the French patent "teaches with the required degree of clarity the features upon which the claims of the Bowen patent are based; the distinct separation of the breasts by a garment which fits the wearer snugly about the body and in the hollow between the breasts; the uplifting molding of the breasts into conical contours by means of shaped cups constructed of segments of conformable material, strengthened by stitching; and the production of a pleasing contour by immobilizing, although not compressing the breasts."

And, recognizing the rule that perfection of workmanship to achieve an even better result by the same or substantially the same means, does not involve invention, i. e. see Cuno Engineering Corp. v. Automatic Devices Corp., 314 U. S. 84, 62 S.Ct. 37, 86 L.Ed. 58; Dow Chemical Co. v. Halliburton Co., 324 U.S. 320, 65 S.Ct. 647, 89 L.Ed. 973; Risdon Iron & Locomotive Works v. Medart, 158 U.S. 68, 15 S.Ct. 745, 39 L.Ed. 899 the trial court concluded that the use of spiral instead of circular stitching; the formation of the breast cups by three segments instead of two; and the use of a center strip and elastic stabilizer, instead of the more cumbersome cloth frame and abdomen band, were all changes in form or substitutions of mechanical equivalents involving only mechanical skill which did not alter the purpose or functions of the brassiere or any of its parts. We agree with the trial court. See Walker on Patents, Deller's Ed., p. 136 et seq.

But we think the court's judgment rests on even firmer ground. Conceding arguendo that the French patent does not, when read within its four corners, disclose the invention with sufficient clarity to invalidate, it is not incompetent as a part of the prior art to negative invention. See In re Eitzen, 86 F.2d 411, 24 C.C.Pa. Patents 772; Himmel Bros. Co. v. Serrick Corp., 7 Cir., 122 F.2d 740, 745.

Spiral stitching for reinforcing various types of garments is not new since Levy 272,385 and Fritsch 403,934. The construction of breast cups from three segments, one of which is triangular and inserted on the inside, sewed together to give a conical shape, is disclosed by Cox 1,771,917, issued in 1928; the center piece or "spacing member" at the front used in a combination to maintain the hollow between the breasts and to urge them into place by the use of elastic at the lower edges, is disclosed by Malnick 1,882,023 (1930), and Kunstadter 1,841,960 (1931). While separate features of different prior patents cannot be combined to constitute anticipation, Lincoln Stores, Inc. v. Nashua Mfg. Co., 1 Cir., 157 F.2d 154; Cover v. Chicago Eye Shield Co., 7 Cir., 111 F.2d 854, they are competent to show that what is claimed to be invention is no more than an aggregation of known elements to produce an improved result. Superior Seperator Co. v. Ottawa Steel Products, 10 Cir., 174 F.2d 483; Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 86 L. Ed. 58; Dow Chemical Co. v. Halliburton Co., 324 U.S. 320, 65 S.Ct. 647, 89 L.Ed. 973; Zephyr American Corp. v. Bates Mfg. Co., 3 Cir., 128 F.2d 380. "To prevent extention of a patent's scope beyond what was actually invented, courts have viewed claims to combinations and improvements or additions to them with very close scrutiny." Halliburton Oil Well Cementing Co. v. Walker, 329 U.S. 1, 10, 67 S.Ct. 6, 11, 91 L.Ed. 3.

The appellant earnestly contends that it has combined known elements to produce a new and novel product, and points to its exceptional commercial success as balancing any doubt in its favor. It is claimed that its product converted the brassiere from a mere retainer to a garment of fashion, and that it is entitled

to the statutory reward for its ingenuity. The degree of commercial success enjoyed by various devices of the prior art is not shown on this record, but we do know from the crowded prior art and common knowledge that such devices have historically been familiar attributes of the feminine toilet. It is not clear whether this particular brassiere created the stylish trend in accentuated breast contours, or whether its success was merely attributable to a bolder era. But in any event, we are convinced that when the patent in suit is considered against the background of the prior art, it amounts to no more than the skillful arrangement of elements or features well known to the crowded art. See Walker on Patents, Deller's Ed., p. 136.

The judgment is affirmed.