**MOTT CORPORATION and C. W. Mott Research Engineers, Appellants,**

v.

**SUNFLOWER INDUSTRIES, INC. and Owen Murrell Crump, Appellees.**

**No. 6962.**

United States Court of Appeals
Tenth Circuit.
March 12, 1963.

George N. Hibben, Chicago, Ill. (Hibben, Noyes & Bicknell, Chicago, Ill., Thomas E. Scofield and Carter H. Kokjer, Kansas City, Mo., were with him on the brief), for appellants.

Claude A. Fishburn, Kansas City, Mo. (Orville O. Gold, Fishburn and Gold, Kansas City, Mo., and W. C. Jones, Olathe, Kan., were with him on the brief), for appellees.

Before BREITENSTEIN, HILL and SETH, Circuit Judges.

HILL, Circuit Judge.

Appellants brought this action in the court below against appellees for alleged infringement upon claims 6 to 13 of United States Patent No. 2,590,065 issued March 18, 1952, to the International Harvester Company and owned by the Mott Corporation. Appellants sought an injunction against further infringement, treble damages for past infringement, and attorney fees. Appellees' answer denied infringement and asserted the usual defenses of invalidity, lack of invention, aggregation and indefiniteness of the claims as well as misrepresentations by the patentee in the Patent Office.

The case was tried to the court and resulted in a judgment holding claims 6 to 10, inclusive, valid and infringed by appellees' accused machine, and claims 11 to 13, inclusive, invalid on the grounds of anticipation and lack of invention over the prior art. The defense of misrepresentation was denied.

This appeal is from that portion of the judgment holding claims 11 to 13 to be invalid. It is admitted that if such claims are valid, then they have been infringed by the accused machine. Therefore, the only question before us is the validity of claims 11 to 13.

The patent in suit, hereafter referred to as the Mott patent, is for a mowing machine which is sold commercially under the name of the Mott Hammer-Knife Mower. The application was filed originally on August 16, 1947, by Carl W. Mott, Sr., who, at that time, was an employee of International Harvester. In the specifications it is stated that "This invention concerns grass-cutting mowers of a type employing flails pivotally mounted on a carrier which is rotatable at high speed about a horizontal axis for sweeping cutting edges of the flails into the grass for cutting the same, and relates more particularly to an improved type of flail and mounting thereof." The specifications further state:

"The general object of this invention is the provision of an improved type of cutter flail or knife provided with a cutter end portion turned outwardly from a pivotally supported shank portion in a manner enabling the cutter portion to cut a miniature swath while accommodating centrifugal discharge of cut grass stems endwise from the flail."

The mower is sold in a number of sizes, ranging from smaller machines suitable for cutting lawns to larger machines used for highway maintenance, parks, golf courses and airports. Prior to the advent of the Mott mower, the sickle bar, reel and rotary types of mowers were used exclusively. Each of these mowers has certain objectionable features when operated under particular conditions and no one of them may be considered an all purpose mower.

The Mott mower was designed to alleviate many of the objectionable

features of the other three types of mowing machines. It can be used in short or tall grass and weeds; it mows smoothly and evenly, laying the finely chopped clippings or shredded cuttings down in an even mulch on the ground without wind-rowing; and it does not throw rocks or other debris which might be struck by the mowing blades. The operator walks behind the smaller models of the Mott mower and the larger models are pulled or pushed by a tractor. The cutting device consists of a rapidly rotating shaft which is carried horizontal and parallel to the ground and on which are mounted a number of flails or knives. The knives are pivotally and loosely mounted on pins which are fastened to the shaft, which allows them to swing out or stand out radially by centrifugal force into the cutting position when the shaft is rotating. A roller and wheels support the shaft above the ground at whatever height is required to leave the uncut grass the desired length. The knives or blades are spaced around the shaft in a helical pattern, which causes an overlapping of the swaths cut by each blade. The name of the mower is apparently taken from the similarity between its action and that of a hammer-mill.

The claims in question[1] relate only to the knives or blades. The asserted inventive feature involved is the alleged self-cleaning capacity of the blades under all types of grass and moisture condi-tions. Each of the blades is about 5 inches long, ¾ of an inch wide and ⅟₁₆ of an inch thick. There are 120 blades on the rotatable shaft of a mower made to cut a four-foot swath. These blades are mounted in pairs and in four rows spaced circumferentially around the shaft with fifteen pairs of blades in each row. Each blade has a hole in one end for the pin by which it is attached to the shaft, and, at the opposite end, the blade is bent or curved. The bent or curved portion is about one inch long and is the cutting portion of the blade. The angle of the bend is claimed to be critical, i. e., if it is greater than approximately 65 degrees as measured between the blade tip and the plane of the shank portion, grass will collect on the bent portion and impair the cutting operation. The knives or blades are mounted or arranged in pairs back-to-back, which means that each pair of blades is mounted on a single pin, with the back of the shank of one blade abutting and in substantial engagement with the back of the shank of the other blade, so that the bent or curved cutting tips diverge away from each other in opposite directions.

The different views and forms of the blades are shown in the various drawings thereof contained in the patent file. The patent states that the angle of departure of the diverging end portion from the shank of the blade is sufficiently restricted to accommodate centrifugal discharge of the cut grass along the out-

1. These claims read as follows:
"11. A cutter flail for a rotary grass mower comprising a rigid strap-like body having a substantially straight shank portion and a cutter end portion extending from one end thereof, said cutter end portion extending out of the plane of said shank portion at a maximum angle of departure in the nature of 65°.
"12. A cutter flail for a rotary grass mower comprising a rigid strap-like body having a substantially straight shank portion and a cutter end portion extending from one end thereof, said cutter end portion terminating in a free end of said strap-like body and being curved out of the plane of the shank portion, the degree in curvature of said end portion being limited so a tangent thereto at the free end forms an angle of departure with the plane of said shank portion within the limit of 65°, and the tangent to said curved end portion at intermediate points thereon form angles of departure with said plane progressively diminishing in value as a function of the distance of such points from the free end.
"13. A cutter flail for a rotary grass mower comprising a rigid strap-like body having a substantially straight shank portion and a cutter end portion extending from one end thereof, said cutter end portion being straight and extending out of the plane of said shank portion at an angle of departure in the nature of 40°."

wardly turned or bent portion and over the free end. It further states:

" * * * An angle $a$ not substantially exceeding 65° is preferred for enabling the flail end portion to cut a reasonably wide swath while avoiding accumulation of grass stems upon such end portion. The end portion * * * illustrated in Fig. 1 has an angle of departure $a$ of 66° which has been found in practice to give excellent results."

Other drawings of the blades as illustrated in the patent figures show an angle of departure of 39 degrees. The blades sold commercially by appellants over the years have had an angle of about 37 degrees. This lesser angle on the new blades is used because the cutting ends tend to bend upwardly upon striking obstructions thereby increasing the angle. When an angle of 65 degrees is reached, the blades should be replaced.

In support of their claimed inventive feature, i. e., the angle at which the cutting tips are bent to allow a self-cleaning effect, appellants introduced evidence at the trial in the form of exhibits to show: If the blades are at angles of 65 degrees or less, the centrifugal force at the blade tip is sufficient to overcome the resistance presented by the blade angle and all grass and clippings will be thrown from them; however, if the angle is more than about 65 degrees and the grass or weeds have high internal moisture content, the resistance to centrifugal force is greater and the cuttings will not be thrown from the blade. Thus, appellants' position is not that blades with an angle at their tip of more than 65 degrees will not mow at all, but that such blades will not mow efficiently under all moisture conditions and therefore could not be used on a successful commercial mower.

Since appellees have admitted that the accused machine infringes upon the claims in question, if valid, it is not necessary for our purposes to describe such machine. Suffice it to say the trial court found, and the evidence confirms, that the accused machine is a virtual "Chinese copy" of the Mott mower.

It is, however, in view of the question presented, necessary to discuss the prior art relied upon to show the invalidity of the claims in question. The prior art relating to the blade claims consists of the following: Herriot Patent, No. 356,602 (British), issued in 1931; Goeldner Patent, No. 1,258,109 (Germany), issued in 1918; and Wallace Patent, No. 1,051,933 (U.S.), issued in 1913. Other patents are cited in the file wrapper reference but they are not material to the issues here. It should be noted, however, that Wallace and Goeldner were not cited by the Patent Office.

Mott's patent application, with respect to the blades, was originally rejected by the Patent Office, primarily upon the basis of the disclosures made in Herriot. In reply to such action, Mott argued that Herriot disclosed only an angle of departure on the blade of about 70 degrees, which was 5 degrees greater than the maximum angle of 65 degrees recommended by him; that a blade with an angle such as shown in Herriot would not permit centrifugal shedding of folded over grass stems, especially when the grass was mature and limp because of moisture saturation; and that the Herriot device was not concerned with cutting lightweight, sparsely located particles, such as grass stems. The claims were again rejected with Herriot being the principal reference and it was said by the Patent Office: "To construct the cutter blade 1 of the Herriot et al. patent so that the cutter tip has a greater or lesser degree of departure from the blade portion, is held to be a matter of degree, within the scope of choice or design, not involving invention." Thereafter, a personal interview was had with the Patent Examiner, at which time a Mott mower with a blade bent up from the normal angle of 37 degrees to an angle "in the nature of 65 degrees" was demonstrated in the field to show that grass has a tendency to cling to a blade with an angle of over 65 degrees. As a

result of this demonstration, the claims in question were allowed.

The Herriot patent is entitled "Improvements in Machines for Cutting Sugar Cane and the like" and describes a stationary machine in which a "rotary knife may be disposed above a conveyor up which the cane travels so that in the rotation of the knife the cutting edges cross the path of travel of the cane." The cane is conveyed toward the rotary knife which rotates in a fixed position. The over-all design of the machine is much like that of a hammer mill. Various views and forms of the blades are shown in the drawings. The angles of departure of the cutting tips from the shank of the blade range from over 90 degrees to approximately 70 degrees and it is stated that certain of the figures "are edge elevations showing four of the many possible variants of the upset tip construction." Four of these drawings are of blades quite similar to the Mott blade drawings except for the angle of departure.

The Goeldner patent relates to a "cultivator" and has for its object the providing of a machine "which will uniformly break up and loosen the whole surface of the ground over which it travels." The only material parts of this patent are the blades described therein. The structure of these blades is similar to that of the Mott blades except that, again, the angles of departure are different. However, the angle of departure in at least one of the drawings of the blades, which are arranged in a back-to-back fashion, is in the nature of 45 degrees, according to appellees' expert testimony.

The Wallace patent is entitled "Machine for Cutting Grass from Railroad-Tracks" and describes a machine consisting of a mobile frame carrying thereunder a horizontal rotor extending across the frame which can be operated at high speeds. Cutting blades are attached to the rotor and pivotally mounted so as to extend radially when the machine is in operation. The blades attached to the rotor are similar to the Mott blades

with the cutting tips being at an angle of 0 degrees in one figure and 90 degrees in another. The record before us does not show this patent to have achieved any substantial commercial acceptance or success. Also, the patent does not embrace any teaching of the self-cleaning blade principle, as found in the patent in suit.

The trial court, in its Memorandum of Decision, expressly found Claims 11, 12 and 13 to be invalid for lack of invention and for want of novelty over the blade disclosed in the Herriot patent, and gave little effect to either the Goeldner or Wallace patents. This holding was buttressed by a finding that "Herriot was not so far divorced from mowing machines as to be in a nonanalogous art, for the elements and purposes of the two devices should have had a similarity recognizable to a man as skilled as this inventor."

The burden of establishing the invalidity of a patent, or of the claims made therein, rests upon the one asserting such invalidity. 35 U.S.C. § 282; Consolidated Electro. Corp. v. Midwestern Instruments, 10 Cir., 260 F.2d 811. Invalidity must be established by clear and convincing evidence. Bewal, Inc. v. Minnesota Mining and Manufacturing Co., 10 Cir., 292 F.2d 159; Jamco, Incorporated v. Carlson, 10 Cir., 274 F.2d 338. A duly issued patent is in all respects presumed to be valid, and such presumption is strengthened in cases where the prior art relied upon to show invalidity was before the Patent Office. 35 U.S.C. § 282; Admiral Corporation v. Zenith Radio Corporation, 10 Cir., 296 F.2d 708; Bewal, Inc. v. Minnesota Mining and Manufacturing Co., supra; Philip Sitton Septic Tank Company v. Honer, 10 Cir., 274 F.2d 811; Consolidated Electro. Corp. v. Midwestern Instruments, supra; G. LeBlanc Corporation v. H. & A. Selmer, Inc., 7 Cir., 310 F.2d 449. But the presumption is rebuttable. Consolidated Electro. Corp. v. Midwestern Instruments, supra; United States Air Conditioning Corp. v. Governair Corp., 10 Cir., 216 F.2d 430.

And, the ultimate question of the validity of a patent is one of law for the court to decide. Admiral Corporation v. Zenith Radio Corporation, supra; Philip Sitton Septic Tank Company v. Honer, supra; Consolidated Electro. Corp. v. Midwestern Instruments, supra.

█ █ We must therefore determine as a matter of law whether claims 11 to 13 of the Mott patent are valid. In so determining, we start with the elementary rule that the elements requisite to the validity of a patent are utility, novelty and invention. Tropic-Aire, Inc. v. Cullen-Thompson Motor Co., 10 Cir., 107 F.2d 671; Hycon Manufacturing Company v. H. Koch & Sons, 9 Cir., 219 F.2d 353, cert. denied, 349 U.S. 953, 75 S.Ct. 881, 99 L.Ed. 1278; Aluminum Company of America v. Sperry Products, Inc., 6 Cir., 285 F.2d 911, cert. denied, 368 U.S. 890, 82 S.Ct. 139, 7 L.Ed.2d 87; Allied Wheel Products v. Rude, 6 Cir., 206 F.2d 752. Or, as stated by Judge Breitenstein speaking for this Court in Admiral Corporation v. Zenith Radio Corporation, supra, at page 712 of 296 F.2d:

"* * * To be patentable, a product or process must not only be a new and useful improvement over the prior art but also it must not be obvious to one of ordinary skill in the related art."

We are not concerned here with the element of utility or usefulness since the Mott patent claims in question obviously are useful within the meaning of the statute, 35 U.S.C. § 101. No contention is made to the contrary. We are, however, concerned with the remaining two elements of novelty or lack of anticipation by the prior art and invention or obviousness to one of ordinary skill in the related art. These are the crucial issues and both were resolved against the appellants in the court below primarily upon the basis of the disclosures made in the Herriot patent.

Appellants contend that the Herriot patent is in a non-analogous art as defined in A. J. Deer Co. v. United States Slicing Machine Co., 7 Cir., 21 F.2d 812, and that none of the three prior patents contain any disclosure of the alleged Mott self-cleaning principle for grass cutting blades. They argue that it would never occur to a mechanic, having the ordinary skill in the mower art, to look at the blades of a stationary sugar cane chopper, as in Herriot, for the solution to the problem of blade clogging in grass mowers. To bolster this argument, appellants point out that Mott is an inventor, having spent a total of twenty-three years working as such for International Harvester and therefore he is something more than "a mechanic having ordinary skill in the art." They further argue that the first experimental Mott blades were at 90 degrees to the shank and difficulties with clogging grass on the blades were encountered. But after experimentation and deliberation, Mott tried blades with inclined tips at an angle of 45 degrees, which to his surprise and pleasure solved this problem of clogging grass.

█ Our determination as to whether the prior art cited and relied upon here is analogous to the Mott patent is important not only upon the issue of novelty but also upon the issue of invention. Whether arts or uses are analogous or non-analogous depends upon the similarity of their elements and purposes. If the elements and purposes in one art or use are related and similar to those in another art or use, and because and by reason of that relation and similarity, make an appeal to the mind of a person having mechanical skill and knowledge of the purposes of the other art, then such arts or uses are analogous. If the converse is true, then they are non-analogous. Stearns v. Tinker & Rasor, 9 Cir., 220 F.2d 49, cert. denied, 350 U.S. 830, 76 S.Ct. 62, 100 L.Ed. 741; B. & M. Corp. v. Koolvent Aluminum Awning Corp. of Ind., 7 Cir., 257 F.2d 264; A. J. Deer Co. v. United States Slicing Machine Co., supra; Allied Wheel Products v. Rude, supra. The question of novelty must be determined from the face of the patent, which is

itself prima facie evidence of novelty. Callison v. Dean, 10 Cir., 70 F.2d 55. An invention or discovery is new or possesses the requisite element of novelty if it involves the presence of some element, or the new position of an old element in a combination, different from anything found in any prior structure. National Slug Rejectors v. A. B. T. Mfg. Corporation, 7 Cir., 164 F.2d 333, cert. denied, 333 U.S. 832, 68 S.Ct. 459, 92 L. Ed. 1116. Novelty must be found outside the field of the prior art. Tropic-Aire, Inc. v. Cullen-Thompson Motor Co., supra. In other words, a valid patent cannot be obtained if the alleged invention was anticipated by a prior patent in this or any foreign country before such invention was made by the inventor. Electric Storage Battery Co. v. Shimadzu, 307 U.S. 5, 11, 59 S.Ct. 675, 83 L.Ed. 1071; In Re McFarlane, 29 C.C.P.A. (Patents) 810, 125 F.2d 169; 69 C.J.S. Patents § 35, p. 213. The burden is upon the one asserting anticipation to sustain it by clear and convincing proof. Consolidated Electro. Corp. v. Midwestern Instruments, supra; Hollywood-Maxwell Co. v. Street's of Tulsa, 10 Cir., 183 F.2d 261, 263.

Under 35 U.S.C. § 103, the test of invention is whether "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." Jiffy Enterprises, Inc. v. Sears, Roebuck & Co., 3 Cir., 306 F.2d 240. To be invention, an improvement in the prior art must involve more ingenuity and skill than the work of an ordinary mechanic in the art. Hotchkiss v. Greenwood, 11 How. 248, 13 L.Ed. 683; Blish, Mize and Silliman Hdwe. Co. v. Time Saver Tools, 10 Cir., 236 F.2d 913, cert. denied, 352 U.S. 1004, 77 S.Ct. 565, 1 L.Ed.2d 549. Mere skill is not invention, and the distinction between mechanical skill and invention is whether what was produced was obvious to persons skilled in the art

and acquainted with the common knowledge in that art at the date the device was created. Ranco, Inc. v. Gwynn, 6 Cir., 128 F.2d 437. In Richards & Conover Co. v. Leishman, 10 Cir., 172 F.2d 365, at page 369, cert. denied, 336 U.S. 952, 69 S.Ct. 882, 93 L.Ed. 1107, this Court said:

"In order to rise to the dignity of invention, the conception of a patent must be the result of the exercise of the inventive or creative faculty, not of mere mechanical skill.

"Mechanical skill is but the display of the expected skill of the calling; it involves only the exercise of the ordinary faculties of reasoning, aided by the special knowledge and the facility of manipulation which is acquired through habitual and intelligent practice of the art and it is in no sense the creative work of that inventive faculty which it is the purpose of the Constitution and the patent laws to encourage and reward.

"That which would readily appear to one acquainted with the prior art and skilled in that art involves merely mechanical skill."

Of course, obviousness, within the meaning of the statute, does not mean that one skilled in the art can perceive the solution after it has been found and pointed out by someone else, but the test is as of an earlier time, when the search is on for the solution to the problem. It should not be determined on the basis of subjective speculation as to what, after everything has been disclosed, might have seemed obvious. Honolulu Oil Corporation v. Shelby Poultry Company, 4 Cir., 293 F.2d 127; S. H. Kress & Company v. Aghnides, 4 Cir., 246 F.2d 718, cert. denied, 355 U.S. 889, 78 S.Ct. 261, 2 L.Ed.2d 189.

The trial court determined the Herriot and Mott patents, insofar as the blades are concerned, to be analogous art. We cannot agree with that conclusion, although granted, it is a close question. The Herriot patent discloses

nothing that would lead to the use of the blades for the mowing of grass or weeds. It describes a stationary machine with rotating blades used to cut up sugar cane, which is brought to the machine by means of a conveyor. It is actually a stationary hammer-mill device to chop the cane stalks into small pieces. The angle of the blades cannot be said to be critical and there is no suggestion of any necessity for self-cleaning of the cutting parts. Herriot cannot be said to teach any solution for the blade cleaning problem found in the cutting of grass. Furthermore, the diverging blade tip shown by Fig. 7 in Herriot is 70 degrees, as compared to 65 degrees in claims 11 and 12 of the Mott patent and 40 degrees in claim 13 of the same patent. A patent, particularly a foreign patent, is to be measured as anticipatory, not by what might be made out of it, but by what it clearly and definitely discloses. Holly-wood-Maxwell Co. v. Street's of Tulsa, supra; Steiner Sales Co. v. Schwartz Sales Co., 10 Cir., 98 F.2d 999, cert. denied, 305 U.S. 662, 59 S.Ct. 364, 83 L.Ed. 430.

The demonstration conducted by Mott, for the benefit of the Patent Office Examiners, is convincing. It shows clearly, after seeing the Mott mower blades in actual use, that those with authority in the Patent Office were convinced and completely changed their positions in regard to the claims in question. We must assume, in light of their previous action, that the Examiners were viewing the demonstration with the Herriot blade in mind, and they concluded the Mott blade possessed all of the elements required for patentability.

Our own examination of Exhibits 16a, 16b and 16c provides additional evidence that the Mott blade claims are meritorious. The self-cleaning ability of the blade certainly has contributed greatly to the commercial success and public acceptance of the Mott mower. As claimed, we consider the angle of the blades to be critical. Without proper angle the self-cleaning principle is not present.

Appellees insist, however, that the Mott blades are improvements which would be obvious to the ordinary skilled workman. The trouble with this argument is that the record clearly shows there had long been a demand for a mowing machine which would successfully cut all types of grass under all conditions. The fact that appellees were unsuccessful in their efforts to develop such a machine and made a virtual "Chinese copy" of the Mott mower is persuasive on the issue of obviousness. The patent in suit may be simple when viewed in retrospect. But simplicity is no bar to invention where, as here, the steps taken were not obvious to the ordinary mechanic skilled in the art. Admiral Corporation v. Zenith Radio Corporation, supra; Blish, Mize and Silliman Hdwe. Co. v. Time Saver Tools, supra; Neff Instrument Corporation v. Cohu Electronics, Inc., 9 Cir., 298 F.2d 82; Amp Incorporated v. Vaco Products Co., 7 Cir., 280 F.2d 518, cert. denied, 364 U.S. 921, 81 S.Ct. 286, 5 L.Ed.2d 260.

Moreover, the fact that the Mott mower, including the diverging blade tips at an angle in the nature of 65 degrees, has been a commercial success and is capable of more effective performance than any previously devised mower is entitled to consideration here. It is true that commercial success in itself is not sufficient to sustain the validity of a patent or bridge the gap between mechanical skill and invention, but it is evidence of patent validity and in doubtful cases, such as this one, may be the deciding factor. Admiral Corporation v. Zenith Radio Corporation, supra; Consolidated Electro. Corp. v. Midwestern Instruments, supra; Oliver United Filters v. Silver, 10 Cir., 206 F.2d 658, cert. denied, 346 U.S. 923, 74 S.Ct. 308, 98 L.Ed. 416. As stated by the Supreme Court in Goodyear Tire & Rubber Co. v. Ray-O-Vac Co., 321 U.S. 275, 279, 64 S.Ct. 593, 88 L.Ed. 721, commercial success "should, in a close case, tip the scales in favor of patentability." On this question, appellees point to Great Atlantic & Pacific Tea Co. v. Supermarket Equip-

ment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162, and other cases, holding that commercial success, without invention, will not meet the requirements of patentability. We certainly recognize that principle, but do not apply it in this case because of our legal conclusion that the claims in issue do show an invention.

We conclude that the claimed blade self-cleaning principle is novel as well as an advance in the art of mowing; that the teachings of the prior art did not anticipate such principle; that it was not obvious to an ordinary person having skill in the art, prior to the Mott patent; and that it entitled the Mott blade to the standing of an invention.

Reversed and remanded with directions to enter judgment in favor of appellants holding claims 11, 12 and 13 of Patent No. 2,590,065 to be valid and infringed.