ARKAY INFANTS WEAR, Inc. v.
KLINE'S, Inc.

No. 5712.

United States District Court
W. D. Missouri, W. D.

Oct. 26, 1950.

See also, D.C., 85 F.Supp. 98.

Claude A. Fishburn, Kansas City, Mo., Harry Price, New York City, for plaintiff.

Kemp, Koontz, Clagett & Norquist and Thomas E. Scofield, all of Kansas City, Mo., for defendant.

RIDGE, District Judge.

Contributory infringement is here claimed of Letters Patent No. 2,450,631, granted October 5, 1948, to plaintiff, as assignee of Ernest Buchler, inventor, on application made therefor April 2, 1948, for improvements in children's garments. Retail sales by defendant of garments within the territorial jurisdiction of this Court, alleged to be infringements of the claims of said letters patent, authorize us to proceed to a decree under the Patent Laws of the United States, 35 U.S.C.A. § 70, and Sections 1338 and 1400(b), Title 28 U.S.C.A.

### The Issues

The patent in suit contains six claims; however, plaintiff limits the issue of infringement to Claims 1, 5 and 6 thereof, and seeks only injunctive relief therefor. All demands for accounting, damages and costs have been withdrawn by amendments made to the complaint. Defenses asserted are invalidity of the letters patent (1) because of lack of novelty over the prior art; (2) because of commercial sale for more than one (1) year prior to filing application therefor; and, non-infringement. We shall consider the issue of validity first, because if the letters patent in suit are found to be invalid, then we need not determine the issue of infringement. There can be no infringement of invalid letters patent.

### History of Letters Patent

The invention here claimed relates generally to the structure of infants' wearing apparel such as creepers, rompers, and the like. Briefly described, it is a one-piece garment having the front and rear members sewed together along the sides; the upper and lower portions are attached to a relatively broad waistband; it has a reinforced neck; the neck and leg band portions are of expansible material; and the lower garment portion is provided on its interior face with a moistureproof lining integrated with the fabric outer portion at seams along the lower part of the waistband, down the sides and around the leg and crotch openings. The inventor of said garment, Ernest Buchler, did not have in mind to originate a new style of creeper,

and the claims of the letters patent in suit do not make call for any style or design. The nature of the invention is defined in Claims 1, 5 and 6 of the Letters Patent, as follows:

"1. In an infant's garment, a relatively wide waistband composed of front and rear parts joined along their sides and being made from one-directionally expansible material, such as knitted fabric, a skirt portion depending from the lower edge of the waistband and being composed of front and rear parts joined along their sides and having leg portions provided with tubular leg collars, said leg portions terminating at their lower ends in overlapping crotch flaps provided with fastening means for holding the flaps in the overlapping, closed position, a moisture-proof lining composed of front and rear parts provided at the interior of the skirt portion, the upper edges of the lining parts being secured to the lower edge of the waistband, the sides of the lining being jointly united with the sides of the skirt material, and the lower edges of the lining parts being joined with the upper edges of the leg collars and of the flaps.

\* \* \* \* \* \*

"5. A garment having a sidewisely united front and rear garment portions, made of one-directionally expansible material and having waist and skirt members and a waistband composed of front and rear elements, all forming continuations of one another, the waistband visibly separating the waist and skirt members, a neck opening formed in the waist member, leg portions formed with the skirt member, circumferentially expansible bands provided at the neck and at said leg portions being made from a material similar to but stretchable less than the material from which the garment portions are made, a pair of individual, resilient elements provided at the interior hip areas of the waistband and being disposed symmetrically to one another, the skirt member having between its leg portions a crotch formation with separably overlapping flaps, and a moisture-proof lining at the interior of the skirt member composed of front and rear parts permanently secured to the lower edge of the waistband,

to the sides of the garment and to the upper edges of the expansible leg bands and of the crotch formation.

"6. A garment having attached upper and lower portions and a waistband, the lower garment portion having front and rear members secured together along their side edges and terminating in leg-enclosing formations provided with circumferentially expansible bands and overlapping crotch flaps, the latter having fastening means for holding the flaps in overlapping, closed position; a moistureproof lining provided for and covering the interior faces of the front and rear members of the lower garment portions and being fixedly secured to the side edges of these front and rear members and to the lower edge of the waistband."

In the concept of said garment, Buchler intended to originate a creeper, having a top and lower portion, with the panty lined with plastic sheeting so that it would have all the advantages that plastic baby panties had before. Baby panties of plastic, or other waterproofing material only, are well known to the industry. Buchler says that he wanted to construct (1) a garment that would be suitable for production; (2) one that would be acceptable to the trade; and (3) one useful to the ultimate user of the garment, which is the baby. His testimony is that he achieved what he had in mind by combining plastic sheeting with a fabric material so as to take care of the different characteristics of the two materials, i. e., wearability, washability, and particularly stretchability. He experimented until he found a way to put the two materials together so that when the two materials are stretched the seams would not break or pull apart. He made numerous experiments until he finally got his sewing machine so set that when the garment was put together it could be stretched out, in spite of the fact that each of the combined materials had an entirely different stretchability, and the seams would hold. He says to do so "quite an adjustment of machinery was necessary, \* \* \*" "it was quite an experimenting on the machines (i. e. sewing machines) until (he) finally got the right combination." The combina-

tion that satisfied him "depends upon what kind of cams you use (on a sewing machine) to combine materials of various stretchability." You have to find that by changing and re-changing the cams thereon, Buchler testified, "until you find the right combination, and then try the garment until you get the result you want, which means seams that stick together in spite of the different stretchability of the two materials combined."

Buchler testified that the garments he experimented on, to achieve the combinations that are the gist of the claims of the letters patent in suit, were garments the style of which had been on the market for a long period of time. Exhibit 9 herein is one such garment, made of knit fabric, without a plastic lining, and is practically the same style of garment as is Exhibit 4, which latter exhibit is a plastic-lined garment, asserted to embody all the elements of Claim 6 of the Letters Patent in suit as commercially manufactured, produced and sold by plaintiff. While making his experiments and before making application for the letters patent in suit, Buchler had knowledge of such garment styles and knew of a garment then commercially sold as "Little Ego", manufactured by the American Textile Converters Company. The "Little Ego" garment is a one-piece creeper, composed of a front and rear portion united along side seams, with a relatively wide waistband joining the upper and lower portions. The "Little Ego" garment has reinforced expandable material at the collar and leg openings and terminates at the lower end with an overlapping crotch and fasteners therefor. The calls made in the first part of Claims 1, 5 and 6 of the Letters Patent, before the call for a moistureproof lining, are to be read with certainty on the "Little Ego" garment. In fact, the "Little Ego" garment without waterproof lining is an identical garment with that part of the claims in suit patentability of which in part is claimed by the letters patent. The American Textile Converters Company began selling the "Little Ego" garment on the open market in March of 1947. Thirteen (13) different sales thereof, in dozens of lots are established

in the record as having been made prior to April 1, 1947. Plaintiff itself manufactured and sold on the open market such a garment, without plastic lining, from "around Eastertime 1947." This is around April 6, 1947, and approximately one year prior to the date application for letters patent was made by Buchler. Buchler's testimony is that he began experimenting with incorporating a plastic lining in such a garment from December, 1946, lasting until August, 1947, when he achieved a plastic-lined garment satisfactory to him and which plaintiff then began to manufacture and sell. Before "Little Ego" was placed on the market "creepers" of similar style, but different construction, had been commercially sold for many years. The evidence before the Court is not sufficient to establish that plaintiff itself manufactured and sold an identical fabric garment, without plastic lining in the panties, as claimed in the instant letters patent, prior to one year before the date application for letters patent was made. However, when plaintiff's evidence concerning that subject is considered with other evidence, and the fact that the style of said garment was old in the art, there is satisfactory testimony before the Court, establishing that except for quality of material and plastic lining, the garment, structural fabric portions of which are in part claimed in the patent in suit, was manufactured and sold by the American Textile Converters, Inc., more than one year prior to the date when application for patent thereon was first filed in the Patent Office by Buchler, so as to place such fabric garment in the public domain.

The conclusion here is irresistible, that with a garment of the style and construction of "Little Ego", Buchler took a plastic front and rear portion and sewed it into the panty thereof at the side seams, at the waistband, and at the leg and crotch openings, so sewing the seams that they would not break open when the garment was stretched. As we view the testimony of plaintiff, all that Buchler had to accomplish in perfecting such structural combination was to find a way to keep the plastic lining and fabric of such a garment from

breaking at the seams. His testimony is that to accomplish this combination he used a different set of cams on a sewing machine than those that were regularly used thereon. He readily states that it was the adjustment of the cams on his sewing machine that effected the required union of the two members. Overlock mamachines so used by him were conventional sewing machines. Different sets of cams or cam adjustments to complete such a combination were required for sewing the upper portion of such a garment and sewing the lower portion, with the waterproofing insertion. In the commercial production thereof, the several parts going to make up the Buchler garment are separately cut and sequentially sewn in production line operations. Beginning at the waistband, the same cam adjustment is used throughout for sewing the lower garment members.

When initially considered by the Patent Examiner the first five claims of the original application were rejected as being equivocal. Claims 1 and 2 thereof were "further rejected as failing to patentably define from McDonald 1,876,311 in view of George (1,329,119) and Berry (1,382,461)." The Examiner ruling that "(it) would not involve invention to provide McDonald with a waterproof lining in view of George, nor would it involve invention to provide McDonald with the overlapping crotch construction of Berry. "The patents to Rosenberg (1,889,701) was cited to show a garment having a shoulder opening, and the patent to Daniel (1,953,-797) to show a knitted garment having stretch-restraining reinforcing tapes, the patent to Haight (1,359,802) to show overedge stitches joining cuff and body portion, and the patent to Scheitlin to show an elastic band stitched to the waistband portion of a union garment."

Five amended claims thereafter filed, substantially in form as set forth in the letters patent, were finally allowed; after petition in usual form claiming infringement of invention and request for prosecution of said application to be made "special" in the Patent Office. At conferences between attorney for Buchler and the Patent Office Examiner, a sample garment made by applicant and also several imitations

thereof containing waterproof lining, made by four of plaintiff's competitors, were submitted for examination and comparison. During the course of the prosecution of said application before the Patent Office Examiner, stress was placed by counsel for Buchler upon the construction of the style of the fabric garment in which a moistureproof lining was integrated, and the manner in which the parts thereof were assembled, claiming a new combination thereof to distinguish Buchler's garment over the prior art cited. The substance of such contention was that the Buchler invention developed a new method of making those garments in such a way that the waterproof lining became an integral part thereof. It appears that such claim of new construction of the fabric portion of said garment, together with the waterproofing material being made an integral part of the panty thereof led the Patent Office Examiner to allow the claims as amended as being patentable.

### Prior Art

In the prior art there is found McDonald (1,876,311) and Swiss Patent (218,-354) issued to Scheitlin, both revealing a garment having an upper and lower portion, with the lower portion depending from a relatively wide waistband made of one-directionally expansible knitted fabric, visibly separating the waist and skirt members. Berry (1,382,461) shows a one-piece creeper, without a waistband "fastened together along the under sides of the sleeves and the sides to produce the body" thereof. Berry also shows "leg portions terminating at their lower ends in overlapping crotch flaps, provided with fastening means for holding the flaps in their overlapping, closed position" and the leg portions thereof provided with tubular collars. Rosenberg (1,889,701) shows a garment having a neck opening formed in the waist member as practiced in the instant letters patent. Daniel (1,953,797) shows a knitted garment having "circumferentially expansible bands provided at the neck and at side" arm openings. An aggregation of the foregoing prior art is found practiced in the "Little Ego" garment above mentioned, and in the fabric portion of the

garment called for in the claims of the letters patent in suit.

In addition to the above prior art existing at the time of Buchler's application, there is found in the invention of George (1,595,051) a waterproof lining for baby pants that is made an integral part thereof, and, the invention of Steiner (2,252,992) has absorbent material, waterproof material, and outer covering material, all sewed together in a baby panty so that they "are secured into an inseparable unit along the seams." (p. 2, col. 1, lines 28 to 37, incl., Steiner, supra). Rand (2,397,-751) is an invention relating to baby panties composed only of synthetic material such as plastic. There is evidence before the Court that the uniting of plastic sheeting, and other waterproofing material, to fabrics, is not new in the garment industry. During World War II, Munsingwear, Minneapolis, Minnesota, sewed waterproofing material into the fabric garments and other material used by the Armed Forces. In determining patentability of the combination claims of the letters patent in suit such additional prior art, along with "Little Ego", with exception as to George (1,595,-051) was not cited by the Patent Office Examiner as having been considered in allowance of Buchler's claims.

### Invalidity of Letters Patent

In light of the foregoing, we believe that the issue of "novelty" and, therefore, invention, claimed in the instant letters patent must be determined by a consideration of whether the combination of the foregoing prior art in the manner Buchler has made claim thereto, in Claims 1, 5 and 6, supra, represents a "new and useful improvement" and discovery over such prior art as to amount to patentability as required by 35 U.S.C.A. § 31; or, is a mere aggregation thereof and only involves mechanical skill. Authorities specifically determining such matter are, of course, not to be found. It must be determined from the particular facts before us.

When the facts in the instant record are boiled down they amount to this: Buchler inserted a waterproof lining in a garment of the style and construction of the "Little Ego" garment that had been manufactured and sold on the open market for more than one year prior to the time application for letters patent was made by him. "Little Ego" is nothing more than an aggregation of the prior art above cited, except as to waterproofing. To accomplish the result of his claimed invention, Buchler reflected and experimented with well known materials, plastic and fabric, and appliances, commercial sewing machines, or parts thereof, until he found the right adjustment on such machines so that the two above materials of different stretchability could be sewed together so that the seams thereof would not pull apart. In doing so, quite an adjustment of machinery was necessary until he finally got the right combination of cams on his sewing machines. When he did so, the results of his claimed invention "depends upon what kind of cams you use to combine materials of various stretchability." (R., p. 29).

At the trial, plaintiff's counsel stated: "Essentially what (Buchler's) patent did was to develop a new method of making these garments in such a way that the lining became an integral part of the garment." The lining referred to is as to waterproofing found in the specifications of the letters patent. That statement, in our opinion, sums up the quality and quantity of all that can possibly be found to be new, if it was new, when Buchler completed his experiments. Was it new? We think not. George (1,595,051) sewed a waterproofing into baby pants so that it became an integral part of the garment as early as 1926. Steiner (2,252,992) did the same thing in 1941. The manner and means by which George accomplished such result was the equivalent of that accomplished by Buchler, except that George did not stitch his waterproofing to the front of the waistband of his garment and across the crotch. Such waterproof lining was, however, attached to the rear portion of the waistband of George's garment from side seams. It became an integral part of George's garment by seaming around the rear portion of the waistband, down the sides, around the leg openings and sewing half-way up across the front portion. The

Patent Office Examiner held that "to provide McDonald (1,876,311) with the waterproof lining of George" would not involve invention. We think the Examiner was correct in so holding. Likewise, we are of the opinion that to provide "Little Ego" with a waterproof lining would not involve invention. "Little Ego", and similarly styled fabric garments have been commercially on the market for years. To have sewn a waterproofing material in any one of such styles would only have required one versed in the baby garment industry to have given some thought to the mechanics of operating a sewing machine for that purpose according to Buchler's own testimony. Anyone so versed could have experimented with the same appliances with which Buchler did, made adjustments thereof, and then accomplished a similar result. For one so mechanically inclined to have done so would have required thought, or the thinking out of the mechanical problem of stitching to a satisfactory conclusion such as Buchler says he did. But to have done so would not have amounted to that "flash of genius" that is required to spell invention. A skilled mechanic can produce a device that is different than what has gone before, but unless it results in something "new" in the sense of a "new and useful invention" then it is not patentable. A known and presently obtainable result, obtained in a different manner, must be inventively new and useful as to the manner of obtaining it before it is patentable. In other words, invention presupposes the generation of a new idea, the creation of a new means and not merely the end result. The mere attainment of a desirable result is not invention. It is only an indicia of invention when considered in the prior art. Results obtained by reflection and experimentation with common every-day appliances do not always spell invention. "Invention is a new display of ingenuity beyond the compass of the routineer". Kirsch Mfg. Co. v. Gould Mersereau Co., 2 Cir., 6 F.2d 793, 794.

The end attained by Buchler's method of sewing waterproofing into "Little Ego" is desirable. It establishes Buchler as an artisan in the baby garment industry. When he discovered such method it was not new, but was the result of aggregation of what was known in the prior art and of his skill with a sewing machine. The sewing of waterproofing material to a piece of fabric so as to make it an integral part of a garment was old in the art at the time Buchler says he accomplished that feat. All that had been done to accomplish it was to find the right cam adjustments of a commercial sewing machine. That was desirable, but it was not invention.

Neither by evidence, argument nor briefs is our attention directed to any calls made in the claims, or to any requirements of the specifications of the letters patent in suit as to the manner the combination claimed by Buchler as patentable is mutually dependent or operable, or is effected other than by operation of a commercial sewing machine having proper cam adjustments. We have examined the claims and specifications for enlightenment thereon, but none such is there revealed. Buchler testified that in the layout of his garment the lower portion fabric material "is a little bit curved in so that it has the stretchability to the extent of the non-stretchable material (so) that (it) doesn't break the seam." Nothing in the specification of his letters patent reveals that fact; and, no call is made therefor in the claims of his patent. The specifications only state that the several members of the garment are attached together "by overlock stitchings employed throughout the manufacture of the garment, when practicable." Haight (1,359,802) reveals overlock stitching. Buchler used such stitching to effect the combination of plastic and fabric, as well as the other combinations of his garment. The specifications direct no particular cut or outlay of the several members of the garment which reveals, in our opinion, a "new and useful" combination thereof that was not known in the prior art. Buchler simply puts the elements of such prior art into his claimed invention and seams them together into a single garment. Each element in his so-called combination performs the same function, in the same way, as it is found in the prior art. There is no

mutuality of action between the calls of the several elements of his claims and the combination as claimed as a whole. They do not interact or cooperate to produce any new results. The results thereof come, not from the coaction of the elements of the claims, but come from a mere collection of such elements, and are dependent "upon what kind of cams you use to combine" such material. That is mere aggregation and does not involve invention. The particular fold of the plastic and fabric members of Buchler's garment at site of attachment, by bending in the plastic member in a space between the fabric members and combining the same with overlock stitching, does not amount to a "new and useful" combination so as to make for patentability. That is a mere mechanical operation. To entitle one to the monopoly provided by letters patent, he must show that his combination device is the embodiment of a new mental conception, the result of mental explorations, which carries him beyond the boundary lines of the field or scope of ordinary mechanical skill attained by aggregation. Unless he does so, novelty is not to be found in the combination claimed by him to be patentable. "In a combination patent the different elements making up the complete device may be claimed in such number and in such varying combinations as the inventor considers necessary for his protection, provided always that when thus claimed the patentee in each instance discloses a complete, new, and operative combination." Farrington v. Haywood, 6 Cir., 35 F.2d 628, 630. We do not find in Buchler's claims "a complete, new and operative combination."

From what is above stated, we believe that we have sufficiently indicated the premise which compels us to find the letters patent in suit issued on Buchler's claimed invention invalid for want of novelty and defining "new and useful" claims subject to patentability. We need not discuss the presumption of novelty and invention arising from issuance of the letters patent in suit by the Patent Office. Suffice it to say that the Patent Office was not advised of the style of garment in which Buchler inserted his waterproofing. That style of creeper garment, having a neck and collar opening, terminating in leg opening with overlapping fastening at the crotch opening, was ancient commercially.

We do not mean to here say that because "Little Ego" is the exact replica of the claims of the letters patent in suit as to fabric calls thereof, we are led to believe that the combination called for in such claims are for that reason alone anticipated. "Little Ego" is just a construction of style anticipating the style that Buchler experimented with. Had Buchler inserted waterproofing in any other style without changing the manner of construction thereof so as to establish a new, complete and operable combination, he would not have novelty amounting to invention. The fact that he claims he made changes in the construction of then existing style and claimed such changes in combination with waterproofing does not, when all such changes so made by him are shown to have been anticipated, and remain operably the same in his garment as anticipated, amount to invention. The changes, and differences of construction of the style of Buchler's garment, are the result of mechanical skill, not inventive genius. With Berry (1,382,-461), George (1,595,051), McDonald (1,-876,311) and Rosenberg (1,889,701), and other existing prior art, no other conclusion can be reached. The end result of Buchler's letters patent is no different than what is to be found as a result of consideration of those previously issued letters patent. Perfection of workmanship to achieve an even better result by the same, or substantially the same, means disclosed in prior letters patent, does not involve invention. Consider the "brassiere" in Hollywood-Maxwell Co v. Street's of Tulsa, 10 Cir., 183 F.2d 261.

Plaintiff's complaint is dismissed, with costs and allowance of reasonable attorney's fees. Counsel prepare formal findings of fact and conclusions in accordance with the foregoing. Decree will be withheld until such are settled.