### KARL KIEFER MACH. CO. v. UNITED STATES BOTTLERS MACHINERY CO.

No. 7084.

Circuit Court of Appeals, Seventh Circuit.

July 22, 1940.

Langdon Moore, of Chicago, Ill., for appellant.

Allen & Allen, Gibson Yungblut, and Theodore Greve, all of Cincinnati, Ohio, for appellee.

Before EVANS, SPARKS, and MAJOR, Circuit Judges.

SPARKS, Circuit Judge.

Appellee charged appellant with infringement of United States patent to Kiefer, No. 1,880,257, issued October 4, 1932, on an application filed July 21, 1930. The defenses were invalidity and non-infringement, and appellant also filed a counterclaim in which it charged appellee with infringement of United States patent No. 2,072,344 to Risser, issued March 2, 1937, to appellant as assignee, on an application filed September 14, 1934. Appellee's defenses to the counterclaim were noninfringement and invalidity. The District Court held the Kiefer patent valid and infringed, and the Risser patent invalid. From the decree this appeal is prosecuted.

The Kiefer patent relates to an improvement in a method of cleaning bottles, or containers with restricted neck openings. Its object is to handle the bottles in their natural upright position, as distinguished from former methods of inverting the bottles for cleaning, and again placing them in an upright position for filling. The disclosure enables the bottles to be handled in a continuous process through the cleaning machine into the filling machine by means of a continuous conveying apparatus without the assistance of an operator.

The Kiefer apparatus, which is referred to in the specifications, is not covered by this patent. The apparatus obviously covers several units designed to cleanse bottles which require different methods of treatment for purification. With the apparatus, as such, and the different units and their uses referred to, we are not concerned. This is purely a process patent and has but three claims,[1] and they do not describe a process for cleaning bottles which have become grimy from being allowed to stand a long time exposed to impurities, but rather those in the condition in which they are received from the manufacturer. The impurities inside such bottles are usually dust, sand from the annealing ovens, chips of glass, paper from shipping cartons and the like, all of which may be blown out by the process disclosed.

The mechanism comprises a conveyor for carrying the bottles, and this is operated by a Geneva movement. Fingers on the conveyor continuously move the bottles step by step from left to right through the machine. A motor, properly geared, drives the movement. The gear mechanism is connected to a rotary shaft which carries a cam. A blow tube, considerably smaller than the bottle neck, is operatively connected to a double-armed, fulcrumed lever. By means of a connecting rod, the cam gives a reciprocating motion to the blow tube so that it lowers and rises and thus enters and withdraws from each bottle as the bottle stops momentarily under the tube. A roller, carried by an element which steadies the connecting rod, reduces the friction. There is also an air pump, and a stand pipe to which a flexible pipe connects. Another pipe, connected to a hood which is directly over the bottle, leads to an exhaust system. Thus all dirt blown from the bottle is collected and sucked away from the mechanism through the hood and pipe to a point outside the room in which the filling operations are done. The air pressure should be from 40 to 100 pounds, and the aperture in the blow tube should be about

---

1. "The method of freeing a dry container, having a substantially restricted neck opening, from impurities on the inside thereof solely by the use of a dry gaseous medium, while said container is in substantially upright position, which comprises releasing a jet of said medium under pressure within said container below the shoulders thereof, whereby impurities within said container are driven upwardly and out through said opening.

2. "The method of cleaning dry bottles having a neck opening smaller than the inside diameter of said bottles and defined therefrom by shoulders, while said bottles are in a substantially upright position, which comprises releasing a jet of dry air under pressure within said bottles and below the shoulders thereof, whereby impurities are forced upwardly and out through the necks of the bottles.

3. "The method of cleaning dry bottles from impurities therein, which comprises placing said bottles in an upright position, moving said bottles serially, and in at least one position in the path of movement of said bottles releasing a jet of dry gaseous medium under pressure in said bottles and below the shoulders thereof, whereby the impurities are forced upwardly and out through the necks of the bottles, and carrying away said impurities."

one-sixteenth of an inch, all in proportion to the size of the bottle cleaned.

■ In the accused device, an air intake nozzle extends through the neck of the bottle and has its aperture below the shoulders of the bottle. The neck of the bottle is contacted by a rubber sealing ring which enables the bottle to be exhausted through an exhaust manifold. The exhausting of the bottle produces an inrush of air through the nozzle so that a blast of dry gas is released within.

The District Court rather tersely and clearly stated the facts with respect to infringement: "In the patent the air is forced in by means of pressure * * *; in the (accused) device * * * the air is drawn in. In one case the air is pushed, and in the other case it is pulled. In each case a jet of air is driven into the bottle from a point below (its) shoulders * * *. In each case the same medium, air, is used, and it is used in the same way and with the same result." The District Court was unable to perceive a difference between the uses, and accordingly held there was infringement. We are of the same opinion.

■ Appellant contends, however, that if it does infringe, it has a license to do so. The contention is based upon the following facts: Appellant took a license from Pneumatic Scale Corporation, Ltd., of Massachusetts, in settlement of a suit which that party had instituted against appellant under United States Patent No. 1,-977,138 to Newey. The use of the machine of the Newey patent involved infringement of the Kiefer patent here in suit, in that the Kiefer Company, appellee here, had granted a license under the Kiefer patent to the Scale Corporation. Hence, appellant argues that it has a license under the Kiefer patent through the Scale Corporation. It does not contend that its license from the Scale Corporation expressly granted any rights under Kiefer, but it argues that appellant's machines stand in the same position as those made by the Scale Corporation under its license from Kiefer, on the theory that one granting a thing, impliedly grants that without which the thing expressly granted would be useless. This is true as a general rule, but the implication will never arise where the immediate licensor, as here, had no authority to license that which had been previously licensed to it. The most that can be said in this respect is that the Scale Corporation could not charge

appellant with infringement of the Kiefer patent, nor is it doing so, for it is not a party to this action.

■ Appellant further contends that, in as much as machines manufactured by the Scale Corporation under its license from Kiefer are free from infringement of Kiefer in their use no matter through whose hands they pass, machines made by appellant under license from the Scale Corporation are in the same position and are likewise free from infringement liability. This conclusion does not follow, because appellant's machines are not made by the Scale Corporation, or for its account. Appellant pays no royalty to Kiefer, directly or indirectly. Hence it has no right to infringe Kiefer, for the Scale Corporation had no power to grant such a right.

■ Appellant contends that Kiefer was anticipated by the following prior art patents.

Hill, No. 26,075, was a British patent, designed to remove moisture from bottles in an inverted position, by setting up a current or circulation of air within the bottle which carried the moisture out through the open end to the atmosphere, either by pressure or partial vacuum. This was not cited during the prosecution of appellee's application, and we perceive no reason why it should have been, for its objects, purposes and means are quite dissimilar to those of the patent in suit, and the operation is performed upon an inverted bottle.

Brand, No. 279,169, was a German apparatus patent, and discloses a machine wherein the bottles are placed in an upright position. Its object was to circulate air through the bottles for the purpose of detecting odors, and the sterilization of the bottles by steam. He did not contemplate the cleaning of dry bottles of sand, paper, bits of glass, dust and the like by means of a blast of dry air, nor did he purport to detect their presence by their odor. He clearly contemplated the testing of used bottles for impurities detectable by odor, and the subsequent sterilization of them by steam. Moreover, Kiefer discloses a process, and Brand discloses an apparatus, which might even suggest the type of Kiefer's apparatus. However, we do not understand that a process can be anticipated by showing a prior art apparatus which could have been used for the process, where the prior art fails to teach that process. Cochrane v.

Deener, 94 U.S. 780, 24 L.Ed. 139; Carnegie Steel Co. v. Cambria Co., 185 U.S. 403, 22 S.Ct. 698, 46 L.Ed. 968. This situation we conceive to be present here, and we think Brand does not anticipate Kiefer.

Capell, No. 1,448,255, discloses a process and apparatus for cleaning and canning vegetables and fruit. It cleans the container in an upright position by means of an air current, preferably steam. The walls of the container are vertical and there is no neck or shoulder. The jet aperture is above the can opening, and the tube never enters the can. Its purpose is to cut and remove grease from the inside of the container, which, of course, cannot be done with dry gas, neither can the container be completely cleaned with steam. We find nothing in this disclosure anticipatory of the purposes and accomplishments of the patent in suit.

Taylor, No. 1,608,634, is merely a milk can sterilizing apparatus, operable on inverted cans which have already been cleansed by washing. The sterilizing agent is air heated with steam.

Daum, No. 1,307,898, is a bottle filling and corking apparatus. There, of course, the bottles are advanced in an upright position under a reciprocating head, as in Kiefer; however, no air or other gas enters the containers, and no cleaning device is disclosed. Neither the Taylor nor the Daum apparatus anticipates the cleaning process of Kiefer.

McLain, No. 938,014, discloses an apparatus for aerating and removing odors from barrels. Here a hollow bung, connected with an air exhaust means, is inserted in the bung hole, and a tube, open to the outer air, extends through the bung hole into the barrel. Air is thus drawn into and through the barrel, thereby providing means by which resinous, pitchy and oily gases, arising from the inner surface of a previously pitch-lined barrel, are withdrawn, and the pitch lining is thoroughly aerified. Kiefer does not claim to accomplish this result, nor does McLain claim to produce the results accomplished by Kiefer. Indeed he could not do so with the apparatus disclosed. True, McLain's apparatus is somewhat similar to that by which Kiefer's process is accomplished, but that is not sufficient to establish anticipation in view of the decisions above referred to.

Appellant further relies upon the prior public use by the Pepsodent Company of a machine for cleaning tooth paste tubes preparatory to filling. These tubes, with caps on them, are filled in an inverted position, the bottom being open and the tube being a cylindrical body, without a restricted neck or shoulders at the end where filled. In order to clean the tubes of dust, the filling machines were arranged so that a suction or exhaust tube was passed down into them, and the exit of dust was through the suction tube and not upwardly and outwardly through a neck of the container. In this it differed from, and was not suggestive of the Kiefer process. Moreover, it is undisputed that quite recently Pepsodent abandoned the suction method and substituted therefor the method of using a blast of gas to rid its tubes of foreign substances.

We think none of the prior art meets Kiefer's claims, and that the court's ruling of validity was correct.

### Risser Patent, No. 2,072,344.

This is an apparatus patent which discloses cleaning and filling means mounted on the same frame. The bottles move through the machine in a step by step fashion. Each bottle first moves to a cleaning head and then to a filling head. When one is being filled, another is being cleaned. The bottles push each other in the line of movement, and lie contiguously during filling and cleaning. Each head comprises several cleaning or filling means acting simultaneously on different bottles, so that a number of files of bottles are treated at once. Both appellant and appellee make machines of this general type. Claim 1[2] is typical, and broadly defines cleaning means, filling means, and adjustable operating

---

2 1. "In a machine of the class described, means for positioning two containers, a vacuum filler nozzle, said means and nozzle being arranged for relative movement whereby to cause entry of the nozzle in a container, a container sealing member adjustably mounted on the nozzle for regulating depth of entry of the nozzle in a container, a suction cleaner nozzle connected operably with the filler nozzle whereby its entry is established in the other container upon said entry of the filler nozzle, a container sealing member mounted on the cleaner nozzle for engaging a container upon said entry of the filler nozzle, and means providing an adjustable operable connection between the nozzles in compensating for the adjustment of the filler nozzle sealing member."

means so that the machine may be set up for simultaneous action of the cleaning and filling means upon any size bottle. The left hand bottle is filled with fluid through a tube, the air being withdrawn through another tube. On the filler tube is mounted a rubber sealing gasket, held by an adjustable collar which determines the level to which the bottles will be filled. The filling and cleaning devices are mounted upon a common support which is capable of vertical movement, either to bring the devices into operating connection with the bottles, or to elevate the devices thus permitting the bottles to pass. The distance of movement of the support is determined by the adjustment of the gasket and collar.

The cleaning device comprises two tubes. One is provided with a non-adjustable sealing gasket, and on this account provision is made to adjust the entire cleaning device up and down, for the gaskets on both the filling and cleaning tubes must simultaneously contact and seal both bottles. The upper part of the cleaning device for this adjustment is made slidable in a collar on a bar or bracket to which the cleaning device may be held in the desired position by means of a set screw. Since the bottles push each other in the files, and since different sizes of bottles may have different diameters, provision is also made for moving the cleaning device toward or away from the filling device. This adjustment is likewise effected by making the bar, above referred to, slidable in a bracket, and fixing its desired position by a set screw.

In the prosecution of the Risser application, it was declared in interference with the Newey patent, above referred to. The claims of the Newey patent, or some of them, were copied in the Risser application for the purpose of causing the interference, and upon trial, Risser received an adverse decision on priority, and he received only such claims as were not specifically involved in the interference. It will be borne in mind that appellant is now operating under a license from the owners of the Newey patent, as referred to in our discussion of the Kiefer patent. In its contention there, that it was properly operating under Kiefer by virtue of a license from the Scale Corporation, the owner of Newey, appellant maintained that its machine was the same as Newey, and we think the record supports that position in all material respects. In both, the same problem is present, of making a simultaneous seal with both bottles. The only difference in the two solutions is that where appellant raises and lowers the support upon which the cleaning devices are mounted, Newey raises and lowers the platform on which the bottles rest. Each has the same purpose and accomplishes the same result.

Appellant contends, however, that Newey does not disclose Risser's feature of adjustability. This is true, and we are convinced that this feature constitutes the sole basis for Risser's claimed novelty. The District Court was of the same opinion. It thought the invention amounted to nothing more than the use of a set screw, and we think that conclusion is sound, for mere adjustability is not invention. See Westinghouse Co. v. Schwarze Co., 6 Cir., 108 F.2d 352; Amdur, Patent Law and Practice, § 57, p. 148.

Appellant further contends that Risser's claim refers to lateral rather than vertical adjustability. We are not convinced that this is true. The object of both Newey and Risser was to make two seals seat simultaneously on contiguous bottles. Both accomplished it by vertical adjustment. Risser made the gasket on his cleaning device more resilient than the gasket on his filling device, and described lateral adjustment, a very obvious thing. Newey went as far as Risser by resiliently supporting his filling device, but described no lateral adjustment. Such adjustment was quite old in the art. See Shelor, No. 1,413,797; Desobry, No. 1, 776,350.

The District Court was correct in its ruling that the Risser disclosure was not invention. The question of infringement was not passed upon by the District Court, and it is not necessary to pass upon it here in view of our ruling.

Decree affirmed.