## HUTCHINSON MFG. CO. v. MAYRATH.
### No. 4240.

United States Court of Appeals
Tenth Circuit.

Oct. 22, 1951.

Rehearing Denied Nov. 16, 1951.

Ralph L. Chappell, New York City, and Wesley E. Brown, Hutchinson, Kan. (Donald C. Martindell, Wesley E. Brown, Hutchinson, Kan., Ralph L. Chappell, New York City, Martindell, Carey, Brown & Brabets, Hutchinson, Kan., and Kenyon & Kenyon, New York City, on the brief) for appellant.

Thomas E. Scofield, Kansas City, Mo., for appellee.

Before PHILLIPS, Chief Judge, and BRATTON and MURRAH, Circuit Judges.

PHILLIPS, Chief Judge.

Mayrath brought this action against The Hutchinson Manufacturing Company, a copartnership, alleging infringement of five claims[1] of Patent No. 2,483,290, issued to Mayrath September 27, 1949. From a judgment holding the claims valid and infringed, The Hutchinson Company has appealed.

If the claims are valid, infringement is admitted.

1. Claims 2, 4, 5, 6 and 10.

Claim 6 is typical of the claims in suit, except Claim 10.

The elements of Claim 6 are: (1) A screw conveyor and its housing tube; (2) A wheeled frame having a vertical post; (3) A sleeve pivotally secured to the housing tube and slidably mounted on the post; (4) A motor supporting frame on the sleeve; (5) A motor unit on the motor supporting frame slidably mounted thereon and operably connected with the screw, such connection including a belt and pulley drive and idler wheels positioned tangentially of the pitch circles of the drive and driven pulleys.

The elements of Claim 10 are: (1) A wheeled frame having a vertical post; (2) A sleeve slidably encompassing said post for vertical movement therealong; (3) A stub axle extending laterally from such sleeve; (4) A feed screw housing pivoted on said axle; (5) A feed screw in said housing, and (6) A motor mount secured to said sleeve and extending laterally therefrom in a direction opposite to that of said axle, such motor mount comprising a pair of spaced arms, a pair of parallel guide rods extending between said arms, and motor mounting elements slidably engaging said guide rods.

The objects of the invention, as stated in the specification, are to provide a loader in which the inclination or height of the discharge end of the screw conveyor can be readily adjusted without interfering with the normal position of the motor; to provide an adjustment whereby the lower end of the tube may be positioned above or below the level of a horizontal line passing beneath the wheels without tilting the sleeve or motor carriage off level; to provide an arrangement of the screw conveyor pivot means so related to the mounting elements for the engine or motor that adjustments of inclination of the conveyor tube may be carried out without involving any readjustment of the relationship between the drive pulley and the driven pulley; to provide for minor adjustments between the engine or motor and the driven pulley, to tighten or loosen the tension of the belt; and to provide a loader with which can be connected an auxiliary feeding conveyor adapted to move a continuous supply of grain to a position in which it can be picked up by the main conveyor.

The sleeve is slidably mounted on a post supported by the wheels and is vertically adjustable on the post. The housing tube is pivotally mounted on one side of the sleeve. The motor is mounted on the opposite side of the sleeve to counterbalance the tube. The drive axle of the motor is positioned in alignment with the pivot supporting the tube. The motor, or engine, is slidably mounted on the sleeve so that its position may be adjusted to tighten or loosen the belt tension.

It will be observed that the objects of the claimed invention as stated in the specifications are to provide means for quick adjustments of the position of the sleeve on the post and the tube on its pivot, without disturbing the essential relations of the several parts and to provide for adjustments of the motor on its support to regulate the belt tension. The functions of the elements in the claims, read in the light of the stated objects of the claimed invention, are to effect such adjustments and thereby place the tube in a desired operating position and obtain a desired belt tension. The adjustments are made and such functions are performed before the device is put into operation. When the adjustments are made, the function of the several adjusting means is completed and the respective adjusting functions of such means produce no result other than the aggregate of the results of such functions. True, the elements of the claims perform other functions during the operation of the machine, but they have no relation to the stated objects of the claimed invention. The adjusting means perform no function during the operation of the device to produce a new or better loading result.

No prior patent or disclosure shows all of the elements of any one of the claims in a single device, but all of the elements in each of the several claims are disclosed by prior patents where they perform the same functions as they perform in the device of the patent in suit.

■ When the respective individual functions of the elements assembled are not changed and where they produce no result other than the added results of such functions, there is a mere aggregation of elements.

■ When the elements are so united that by their reciprocal influence upon each other, or by their joint action on a common objective, they perform additional functions and accomplish additional results, the union is a true combination.

■ The result must be due to the joint and cooperative action of all the elements, not a mere aggregation of the several results of the separate elements acting independently; it must be the product of the combination and not a mere aggregate of several results, each a complete product of one of the combined elements.[2]

The prior art patent, Dolyniuk No. 2,355,711, discloses a portable grain loader of the screw type with a single table to carry the power unit and the conveyor tube. The table is carried by the end gate of the vehicle into which the grain is to be loaded. The tube is carried on horizontal trunions or pivots supported by a U-shaped bracket mounted on the table. The pivots are aligned with the power unit drive shaft on which the drive pulley is located. The table and the power unit remain level at whatever height the table is positioned and adjustment of the position of the tube on its horizontal pivots may be made without changing the level of the table or the power unit or the distance between the drive shaft pulley and the driven pulley, obviating the necessity of making belt tension adjustments when the position of the table or the tube is changed. Thus, it will be seen that the elements of this patent and the arrangement thereof perform the same functions as like elements and arrangement perform in the patent in suit. ·

The prior art patent, Kaesler No. 2,395,410, discloses a portable grain loader with a screw conveyor and a housing tube.

The device is supported by a tripod, or standard. It also embraces: A vertical post slidable in the lower portion of the standard; a U-shaped bracket at the upper end of the post and the housing tube pivotally mounted on the bracket; a power unit mounted on the tube; a drive pulley mounted on the shaft of the power unit; a driven pulley at the upper end of the screw; and idler pulleys positioned tangentially of the pitch circles of the drive and driven pulleys. The elements of this patent, except the power unit mounting, and the arrangement of such elements perform the same functions as like elements and arrangement perform in the patent in suit.

The prior art patent, Parker No. 1,321,123, discloses a portable grain loader with a belt, rather than a screw type conveyor. It discloses a wheel frame with vertical guide members mounted on the frame, a support for the tube and power unit, such support being vertically slidable in the guide members for vertical adjustment. The power unit is carried on the vertical adjustable support and the tube is pivotally mounted on the vertically adjustable support. The wheels and frame, the vertical guide members and the vertically slidable support, and the pivots carrying the tube, and the arrangement thereof perform the same functions as like elements and arrangement perform in the patent in suit.

The prior art patent, Koch No. 2,370,048, discloses a motor base along which a motor may be adjusted readily to loosen or tighten the belt connecting the motor drive to a driven member. The motor base consists of a pair of supporting arms or shoes, a pair of parallel guide rods extending between these arms, cross pieces or motor mounting elements which slidably engage the rods and a motor fastened to such motor mounting elements. The motor and its mounting elements may be slidably moved on the guide rods to loosen or tighten the belt. The elements of this patent and the arrangement thereof per-

---

2. Independent Oil Well Cementing Co. v. Halliburton, 10 Cir., 54 F.2d 900, 905; See also, Great A. & P. Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 151, 152, 71 S.Ct. 127, 95 L.Ed. 162.

form the same function as like elements and arrangement perform in the patent in suit to adjust the belt tension.

The prior art patent, Tautz No. 2,041,-578, discloses a drill press head with a vertical post and a sleeve slidably mounted thereon for vertical adjustment and the driven element mounted on one side of the sleeve and the motor mounted on the opposite side of the sleeve to effect counterbalance. It also discloses a motor mount slidably connected to the sleeve for horizontal movement, so that the position of the motor may be adjusted to regulate the tension of the driving belt. It discloses the principle of counterbalance between the driven element and the power unit on a single sleeve slidably mounted for vertical adjustment employed in the device of the patent in suit and the common expedient of an adjustable motor support to regulate belt tension likewise employed in the device of the patent in suit.

The prior art patent, Hedgpeth No. 2,176,572, also discloses the principle of counterbalance, on a single sleeve that is slidably adjustable vertically, employed in the patent in suit.

We are of the opinion that the respective individual functions of well known elements drawn from prior art patents are not changed or increased when assembled in the device of the patent in suit, and that they produce no result other than the aggregate results of such functions. They are not so united that by their reciprocal influence upon each other or their joint action on a common objective they perform additional functions and accomplish additional results. In other words, they do not meet the test laid down in Great A. & P. Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 151, 152, 71 S.Ct. 127, 95 L.Ed. 162, that the whole in some way must exceed the sum of its parts.

 Although all the elements are not found in one patent and therefore no single patent anticipates, if such elements are found in different prior patents in the same art, such disclosures may be properly considered on the question of whether invention or mechanical skill was involved.[3]

And where a patentee brings together old elements in a mechanism, involving no new principle, to produce an old result, although he produces a machine that is more efficient and hence more useful in the art, it is still the product of mechanical skill and not of invention.[4]

Here, we think the bringing together of old and well known elements disclosed in the prior art patents did not rise to the dignity of invention, but rather involved mere mechanical skill.

Accordingly, we conclude that the claims in suit are invalid and the judgment is reversed.

3. Linville v. Milberger, 10 Cir., 34 F.2d 386, 388.

4. Altoona Theatres v. Tri-Ergon Corp., 294 U.S. 477, 486, 55 S.Ct. 455, 79 L.Ed. 1005.