**UNIVERSAL INCORPORATED,**
Plaintiff,

v.

**KAY MANUFACTURING CORPORA-
TION, Defendant.**
No. C-42-G-59.

United States District Court
M. D. North Carolina,
Greensboro Division.
June 22, 1961.

Thornton H. Brooks and McLendon, Brim, Holderness & Brooks, Greensboro, N. C., and Will Freeman, D. D. Allegretti and Bair, Freeman & Molinare, Chicago, Ill., for plaintiff.

Norman Block, Greensboro, N. C., and Harry Jacobson, Ralph L. Chappell and Kenyon & Kenyon, New York City, for defendant.

EDWIN M. STANLEY, Chief Judge.

This is an action for infringement of United States Letters Patent No. 2,480,-667, issued August 30, 1949, upon application filed February 21, 1944, by William H. Neely, for a wire spring for upholstered spring structures. Plaintiff, by assignment, is vested with full title to the patent in suit, and there is no issue as to ownership of said patent. The defenses are invalidity and non-infringement.

The case was tried by the court without a jury. At the conclusion of the trial, the court took the case under advisement pending receipt of request for findings of fact and conclusions of law, and briefs of the parties, in support of their contentions.

The proposed findings of fact, conclusions of law and briefs having been received, the court, after considering the pleadings, evidence, exhibits, briefs, and oral arguments of the parties, now makes and files herein its Findings of Fact and Conclusions of Law, separately stated:

Findings of Fact

1. This is an action under the Patent Laws of the United States for infringement of United States Letters Patent No. 2,480,667, issued August 30, 1949, upon an application by William H. Neely, filed February 21, 1944, for a wire spring for upholstered spring structures.

2. The plaintiff is the assignee of the patentee Neely, and is vested with full title to the patent in suit.

3. The plaintiff, Universal Incorporated, is a corporation of the State of Ohio and has its principal place of business at Bedford, Ohio. Plaintiff is engaged in the manufacture and sale of corrugated wire springs to customers throughout the United States, including the Middle District of North Carolina.

4. The defendant, Kay Manufacturing Corporation, is a corporation of the State of New York, and has its principal place of business at Brooklyn, New York. Defendant is engaged in the manufacture and sale of corrugated wire springs throughout the United States, and for that purpose maintains a regular place of business at High Point, North Carolina, within the Middle District of North Carolina.

5. The plaintiff gave written notice to the defendant of its infringement of the patent in suit by letter dated August 26, 1958.

6. The complaint was filed on March 25, 1959, and charges defendant with infringement, during the six years next preceding the date of the complaint, of the patent in suit, by making, using and selling corrugated wire springs embodying the invention claimed in the patent.

7. The answer was filed on April 10, 1959, and, in addition to the defense of invalidity and non-infringement because of anticipation and lack of invention, asserts a counterclaim for declaratory judgment involving the same issues raised by the complaint.

8. The Neely Patent relates to corrugated wire springs for upholstered furniture backs, and the defendant is charged with infringement of each of claims 1 through 4 of said patent. The patent describes the purpose of the invention as being the provision of improved corrugated wire springs which, when mounted crosswise on an open frame and padded and covered by upholstery, are free of stiffness in localized areas and readily yield to the load when in use. The patent further describes various forms in which the invention may be physically embodied, but requires that all such structures must comprise a corrugated wire load-bearing member and a corrugated wire supporting member which is angularly V-shaped and is rigidly connected to the load-bearing member with its apex spaced therefrom.

9. The accused springs are made by the defendant at its place of business in High Point, North Carolina, and are:

(a) A corrugated wire back spring sold by defendant to the International Division of Schnadig Corporation;

(b) A corrugated wire back spring sold by the defendant to the plaintiff; and

(c) All other corrugated wire back springs which are materially similar to the structural characteristics of the foregoing, and which were manufactured and sold by the defendant within six years of the date of the filing of the complaint herein.

10. The claims of the patent in suit are the result of a vigorous history of prosecution in the Patent Office, including an appeal to the Patent Office Board of Appeals. The novel and inventive features of the Neely Patent are pinpointed by the Board of Appeals as being "the cooperative relationship of the V-shaped supporting member with its rigid connection between the supporting member and the load-bearing member."

11. The Board of Appeals further held that other details recited in some of the claims, "such as the unequal length of the arms of the supporting member and the angular offsetting of the end loop of the shorter arm toward the longer arm of the supporting member," were not of patentable significance.

12. The prior art cited and applied by the Patent Office before granting the Neely Patent in suit fails to disclose a corrugated wire spring assembly having a V-shaped supporting member rigidly coupled with a load-bearing member so as to provide a mutual exchange of bending stresses between the members. Such prior art structures are characterized either as wire springs having a straight, rather than a V-shaped, supporting member, or as band or strap metal, rather than corrugated wire configuration. The structure disclosed and claimed by the patentee Neely was, therefore, found to be novel and useful. The Board of Appeals concluded that the claims which recited both the V-shape of the supporting member, and a rigid connection between it and the load-bearing member, were allowable.

13. The defendant cited 43 prior art patents in its pleadings, in addition to the 11 prior art patents already considered by the Patent Office.

14. The defendant's expert witness identified French Patent No. 387,701, issued to Compin in 1908, as defendant's best anticipatory reference. The Compin patent discloses a strap metal or band type spring assembly having a supporting member of broadly open U-shape. The Compin patent is not different in any material respect from the disclosure of the Nelems patent No. 2,203,598, considered by the Patent Office in granting the patent in suit.

15. The defendant's expert witness further testified that defendant's second best anticipatory reference was Fryer patent No. 2,034,092, which discloses a structure employing ordinary straight,

rather than corrugated, wire. The Fryer patent is not different in any material respect from the disclosures of the Hopkes patents No. 2,214,136 and No. 2,234,253, considered by the Patent Office in granting the patent in suit.

16. The Compin and Fryer patents, and the remaining prior art cited and relied upon by the defendant as anticipatory of the Neely invention, cannot be considered as better or closer prior art than the file wrapper references expressly considered by the Patent Office in granting the patent in suit.

17. None of the prior art references cited by the defendant discloses in combination the structure of the patent in suit, and it does not appear from any evidence that any of such disclosures would have suggested to a person skilled in the art the wire spring assembly invented by Neely at the time of his invention thereof. It is, therefore, found that none of the prior art references cited by the defendant anticipates the claims of the patent in suit.

18. Each of the claims of the patent in suit clearly and definitely defines a combination of elements cooperating to provide a novel spring assembly possessing important advantages over all the prior art structures.

19. The patent in suit is a clear, concise and exact description of the Neely invention in such terms as to enable one skilled in the art to make and use the same.

20. The patent in suit discloses a typical illustrative embodiment of the invention, but it contemplates numerous variations in size, shape, contour, and mechanical detail within its scope, provided only that all such variations must comprise the essential features of a corrugated wire load-bearing member and a V-shaped corrugated wire supporting member rigidly coupled thereto with its apex spaced therefrom.

21. Nothing in the prior art, or in the prosecution of the application which resulted in the Neely Patent, requires any claims in issue to be so limited as to exclude the accused springs from responding to the terms and requirements of the claims.

22. The plaintiff has experienced great commercial success in marketing the invention embodied in the patent in suit, and has expended great sums of money in order to achieve and fulfill that commercial success.

23. One of defendant's accused devices, plaintiff's Exhibit 14, was expressly designed as a direct substitute for plaintiff's commercial spring embodying the Neely invention, and was sold by the defendant to the International Division of Schnadig Corporation, a customer of both the plaintiff and the defendant.

24. The defendant's accused structures constitute the full mechanical equivalents of the illustrative embodiments of the patent in suit, and serve to perform substantially the same functions in substantially the same way to obtain the same result.

25. The defendant set out to manufacture and sell springs embodying the invention of the patent in suit in direct competition with the plaintiff, and for the purpose of taking away plaintiff's business based upon its patent.

26. The plaintiff's commercial springs teach selective variations of the location of rigid couplings between the supporting and load-bearing members so as to achieve variations in the commercially desired stiffness or rigidity of the upper end of the spring assembly. The defendant's accused springs accomplish substantially the same result of upper-end stiffening in substantially the same way through the mechanical means employed to provide the rigid coupling. The particular form of rigid coupling of the supporting member with the load-bearing member employed by the defendant does not avoid infringement of the patent in suit, and the particular mechanical means used by the defendant for effecting rigid coupling is within the scope of the claims of the patent in suit.

27. The defendant's accused springs, as exemplified in plaintiff's Exhibits 12

and 14, fully respond to and include the combination of elements set forth in each of claims 1 through 4 of the patent in suit.

## Discussion

William H. Neely, the inventor of the patent in suit, has been a skilled inventor in the field of corrugated wire springs for many years, and is well versed in all phases of the problems and needs of such springs in furniture and automotive seating. He stated in his patent application that the important requirements which he sought to fulfill were not fully satisfied in the present-day spring structures. One of the important problems which characterized the prior known spring structures, and which Neely faced at the time he contributed his invention, was that of devising a spring structure which would be neither too hard nor too soft along its full load-supporting length. It is evident from the eleven prior patents which the Patent Office considered as pertinent to its deliberations leading to allowance of the Neely patent, and also from the citation of forty-three additional patents by the defendant as pertinent to the Neely invention, that a great deal of labor and effort had been carried on by prior art workers in seeking solutions to these problems. In order to accomplish the important objectives which the prior art was incapable of achieving, Neely taught for the first time a cooperative relationship between a V-shaped, sinuously corrugated wire spring supporting member and its rigid connection to a sinuously corrugated load-bearing member.

The application for the Neely patent in suit was filed in 1944 and was subject to a vigorous and extensive examination before it was allowed more than five and one-half years later. The application was rejected on four successive occasions by an examiner who cited and applied eleven prior art references. The original application contained 21 claims, all of which were rejected by the examiner as being unduly multiplied. The application was finally submitted to the Patent Office Board of Appeals for consideration. Following a hearing, the Board of Appeals, in the exercise of its supervisory discretion, allowed four of the claims of the patent. We thus have a patent prosecution history which clearly focuses attention upon the precise point of inventive novelty upon which the patent has been granted. The heart of the Neely invention was stated by the Board of Appeals to be the following:

"Appellant states that this rigid connection is an absolute necessity in order to build up proper bending resistance in both members so as to effect proper support of loads when sinuously corrugated wire springs are constructed from relatively thin wire. Because of this rigid connection there is a mutual exchange of bending stresses between the members. Appellant states, however, that when said rigid connection is provided in association with a straight supporting member as in his prior patent, there will be produced localized stiffened areas in the connections which result in hard spots in the cushion which have heretofore been counteracted by the use of excessive amounts of padding. Appellant has solved this problem by making his supporting member V-shaped, thus giving it more flexibility while retaining the beneficial effect of the use of a rigid connection between the members."

Additionally, the Board of Appeals pointed out certain claim language relating to unnecessary or unimportant features of the invention. Although such features are necessary to a full structural environment for the invention, they represent areas in which the claims must be liberally construed:

"There are other details recited in some of the claims such as the unequal length of the arms of the supporting member and the angular offsetting of the end loop of the shorter arm toward the longer arm of the supporting member, but we do not consider them to be of patentable significance."

The controlling issue relating to the patentability of the invention was then stated as follows:

"In our opinion, the question of patentability must turn about the cooperative relationship of the V-shaped supporting member with the rigid connection between the supporting member and the load-bearing member."

■ As in all patent cases, the court must start with the statutory presumption of validity which attaches to the granting of the patent.[1] This presumption is a positive factor which must be overcome by clear and convincing evidence by one who asserts invalidity. Mumm v. Jacob E. Decker & Sons, 1937, 301 U.S. 168, 57 S.Ct. 675, 81 L.Ed. 983, and Consolidated Electrodynamics Corp. v. Midwestern Instruments, 10 Cir., 1958, 260 F.2d 811. And the presumption of validity is strengthened where the patent was granted only after considerable controversy in the Patent Office, and after review by the Board of Appeals. Baker-Cammack Hosiery Mills v. Davis Co., 4 Cir., 1950, 181 F.2d 550, certiorari denied 340 U.S. 824, 71 S.Ct. 58, 95 L.Ed. 605.

■ The prior art references considered by the Patent Office were Gleason Patent No. 2,122,979; Nelems Patent No. 2,203,598; Hopkes Patent No. 2,-214,136; Hopkes Patent No. 2,234,253; Neely Patent No. 2,279,336; Neely Patent No. 2,308,772; Neely Patent No. 2,384,191, and four foreign patents. Since these patents were considered by the Patent Office, and the Neely Patent was granted notwithstanding the teachings of these patents, the presumption of validity attaches to the patent in suit insofar as concerns these patents. However, the presumption of validity arising from the granting of a patent does not exist as against prior art not before the Patent Office. Senco Products, Inc. v. Fastener Corp., 7 Cir., 1959, 269 F.2d 33.

■ In addition to the eleven prior art references considered by the Patent Office, the defendant has cited 42 additional prior art references, amounting to a total of 53 prior art references in all, which the defendant has deemed pertinent to the patent in suit. The citation of such a great number of prior art patents in an attempt to meet the patent in suit is strongly indicative of the fact that Neely did indeed make an important invention. Reynolds v. Whitin Mach. Works, 4 Cir., 1948, 167 F.2d 78, certiorari denied 334 U.S. 844, 68 S.Ct. 1513, 92 L.Ed. 1768.

■ The defendant's expert witness Krakauer identified French Patent No. 387,701, issued to Compin in 1908, as the best single anticipatory reference. Although this patent has been in public domain since 1908, the defendant has failed to show any commercial use thereof, either in the form disclosed in the reference or in any adaptation thereof to corrugated wire spring structures. The question of commercial success of prior art teaching is of considerable importance. Hutzler Bros. Co. v. Sales Affiliates, 4 Cir., 1947, 164 F.2d 260. The Compin patent discloses a strap metal or a band type of spring which is quite different from the sinuously corrugated spring claimed in the Neely Patent in suit. A band spring cannot provide an angularly V-shaped supporting spring member in the manner of a wire spring. Even if a band spring were bent to form a V-shaped member, localized bending at the apex would cause early failure, precluding its practical use in any commercial structure. For this reason, Compin employed a broad, open U-shape, which is typical of band type springs. It is not possible for Compin to provide Neely's true V-shape with an angular offset at the area of rigid connection with the load-carrying element. Additionally, the Compin reference, now relied upon by the defendant as its single best anticipatory reference, corresponds fully with Nelems Patent No. 2,203,598, which had already been considered by the Patent Office. Structurally, the Compin

1. 35 U.S.C.A. § 282.

and Nelems patents are substantially identical, and the Nelems patent is just as close to the Neely invention and teaches just as much as the Compin patent.

The defendant's second best anticipatory reference was identified by the defendant's expert witness as being Fryer Patent No. 2,034,092, which discloses a structure employing ordinary straight, rather than sinuously corrugated, wire. The employment of straight wire in the construction of springs does not do the same thing in the same way for the same result as the employment of sinuously corrugated wire. There is no structural cooperation through the use of straight wire which will prevent the production of hard spots or undesired stiffness in localized areas. Additionally, the Fryer patent disclosure is no better as a reference for the patent in suit than the Hopkes Patents No. 2,214,136 and No. 2,234,253, which were considered by the Patent. Office when passing judgment upon and allowing the patent in suit.

After carefully examining and considering the prior art patents cited by the defendant, it is found that the Neely Patent discloses invention and is patentable over the prior art.

With respect to infringement, a detailed discussion of all four claims is deemed unnecessary. Claims 1 and 4 are typical. Suffice it to say all four claims provide for the rigid coupling of a sinuously corrugated V-shaped supporting member to a sinuously corrugated load-bearing member.

Claim 1 of the patent in suit provides:

"A wire spring for cushioned seat structures comprising an elongated, sinuously corrugated body portion, and an independent V-shaped sinuously corrugated supporting portion for said body portion, said V-shaped supporting portion including a short arm and an arm of substantial length, the short arm including an angularly offset end portion engaged with the rear face of said body portion and rigidly coupled therewith between the opposite ends thereof, and the long arm being extended from said short arm rearwardly of said body portion in spaced relation with respect thereto, said angularly offset end portion of said short arm effecting rearward spacing of the apex of said V-shaped supporting means from said elongated, corrugated body portion."

Claim 4 of the patent in suit provides:

"In a cushioned seat structure a frame having oppositely arranged rails, a sinuously corrugated wire spring member of substantial length rigidly connected with one end to one of said rails so that its other end extends in spaced relation from the other one of said rails, and a shorter, sinuously corrugated wire spring member of V-shaped form having a long arm rigidly connected to the other one of said rails in alignment with said first spring member and spaced relation with respect thereto and having a short arm including an end portion contacting the rear face of said first spring member and rigidly coupled with said spring member between the opposite ends thereof, the said long arm having several times the length of said short arm."

The defendant's accused spring is a wire spring designed for the back of a cushioned seat structure. Its first element is an elongated, sinuously corrugated body portion or load-bearing member. Its second element is a V-shaped sinuously corrugated supporting member for the load-bearing member, and includes a short arm and a long arm. However, this relative length relationship, although found in the defendant's accused spring, was expressly held by the Patent Office Board of Appeals not to be of patentable significance. The short arm includes an angularly offset end portion which is formed by a twisting of the cross bar which passes through the clip, so that as the upper end of the short arm emerges from the clip it is in angularly offset relation and is engaged with the rear face of the body portion.

The short arm is also rigidly coupled with the body or load-bearing member, between the opposite ends thereof, by means of a clip *and* the so-called double back portion which extends from the end of the short arm at the clip to the top of the body portion. The double back portion is essentially the same, for all practical purposes, as a second clip. Since the claims of the Neely Patent require only that the load-bearing and supporting members be "rigidly coupled," any convenient mechanical means serving that purpose satisfies the patent. Such coupling means need have no particular location with respect to the cross bars along the length of the load-bearing member.

The defendant urges that its accused spring does not infringe the patent in suit for the reason that the defendant's approach to the problem of a back spring was diametrically opposed to that of the patent in suit. It is argued that the defendant turned its back on the patentee's concept of a spring having a long, flexible load-carrying face member which would conform to the weight of the load without any localized hard spots or areas since it made the upper portion of the accused spring hard and stiff. This argument is based on the contention that the V-shaped supporting member of the accused spring is not "independent" and is not rigidly coupled between the opposite ends of the load-bearing member. The gist of the defendant's argument is that its accused spring is made of one piece of sinuously corrugated wire having only one clip at the point where the V-shaped supporting member engages the load-bearing member, and that the sinuously corrugated wire then is interlaced with the load-bearing member so as to form a hard or stiff portion at the top, thus making the accused spring materially different from the patent in suit. There is no merit to this argument. As earlier noted, this interlaced or double-backed portion performs essentially the same function as a second clip. Further, the defendant's expert witness conceded that there would be virtually no difference in the two springs if the plaintiff's spring were rigidly coupled at the point the supporting member engages the load-bearing member and again rigidly coupled at or near the top of the load-bearing member. It is admitted that this would have the effect of making the top portion of the plaintiff's spring stiff or rigid and would serve virtually the same purpose as the interlacing of the top portion of the accused spring. There is nothing in any of the claims of the patent in suit which requires the two rigid couplings to be placed at any particular point. The requirement is that the supporting member be rigidly coupled with the load-bearing member "between the opposite ends thereof." Further, a stiffening of the upper portion of the load-bearing member to meet the demands of the trade for a particular type of upholstered furniture does not prevent such load-bearing member from readily yielding to the load when in use.

The defendant first entered the field with its accused spring in 1957. At that time the defendant knew of plaintiff's commercial springs embodying the invention of the Neely Patent and knew of no others like them. The plaintiff has expended large sums of money in creating a new market for the unique back springs of the Neely Patent, and in building up its manufacturing ability to supply that market. The plaintiff has created and designed hundreds of different practical embodiments of the Neely invention, and has sold more than three million dollars worth of such springs to the larger furniture manufacturers in the United States. There can be no doubt that plaintiff built an entirely new and very large business upon the foundation of the Neely Patent. As an employee of the defendant, one Pietruszka set out to design a spring which would perform all the functions of the Neely spring, but which would attempt to avoid strict and technical readability on what he considered to be unimportant limitations in the claims of the Neely Patent. Pietruszka utilized a single clip with interlacing to achieve the critical rigid

coupling required by the claims of the patent in suit. He did this despite the fact that the broad claims of the Neely Patent required the rigid couplings without regard to the manner or mechanical means by which they were accomplished. Any differences in softness or hardness between the patent in suit and the accused spring are incapable of detection or observation. The two springs are so identical in end result as to be completely interchangeable. The defendant's accused spring was designed to be used by the same furniture manufacturers in the same furniture for which plaintiff had designed the springs of its Neely Patent to meet the particular customer's requirement of chair shape.

It is concluded that the defendant's accused spring corresponds fully, element for element, and is a direct infringement of claims 1 and 4 of the Neely Patent in suit. Further, plaintiff showed that claims 2 and 3 of its patent likewise read on the defendant's accused spring. Additionally, regardless of differences in claim language construction which the defendant might argue in defense of its infringement, plaintiff has established that all such differences lie wholly within the proper application of the doctrine of equivalents. Graver Tank & Mfg. Co. v. Linde Air Products Co., 1950, 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097. There can be little doubt but that the two devices "do the same work in substantially the same way, and accomplish substantially the same result, * * * even though they differ in name, form, or shape." Sanitary Refrigerator Co. v. Winters, 1929, 280 U.S. 30, 42, 50 S.Ct. 9, 13, 74 L.Ed. 147.

Conclusions of Law

1. The court has jurisdiction of the parties and of the subject matter.

2. The Neely Patent No. 2,480,667 is a patentable invention, and as to claims 1 through 4 thereof, is in all respects valid.

3. The defendant has infringed claims 1 through 4 of the Neely Patent No. 2,480,667 by the manufacture, use and sale of its springs typically embodied in plaintiff's Exhibits 12 and 14.

4. Judgment should be entered for the plaintiff on its complaint enjoining further acts of infringement and providing for an accounting for profits and damages.

5. Plaintiff's claim for attorneys' fees is disallowed.

6. Defendant's counterclaim should be dismissed upon its merits.